## BELL & CARLTON v. WELCH, ADM'R.

1. PRACTICE IN SUPREME COURT: *Finding of Court conclusive as a verdict of a jury*

   The finding of the Circuit Court sitting as a jury, is equally as conclusive in the Supreme Court as the verdict of a jury.

2. ADMINISTRATORS: *Employment of Attorneys; Construction of Statute.*

   Where one who is executrix and also sole legatee of an estate, employs an attorney to prosecute a suit for land devised to him, which is not needed for the payment of the testator's debts, upon a contingent fee of part of the recovery, the contract will be considered as that of the legatee, and not of the executrix; and will be binding, and not avoidable by a succeeding administrator *de bonis non* with the will annexed; and the attorney can set off his claims for services

against the suit of the administrator against him for the fruits of the recovery in his hands.

The scope and design of the Statute (*Gantt's Dig.*, 195–197), is to require the allowance of fees to representatives of estates out of sums for which they may be chargeable, and has no application to a contract made by the devisee and owner of the land, in good faith, with the attorneys for its recovery.

3.  ATTORNEYS' FEES : *Jury can assess only on proof.*

A jury can assess the value of an attorney's services only on proof of them and their value adduced at the trial.

APPEAL from *Pulaski* Circuit Court.
HON. J. W. MARTIN, Circuit Judge.

*Bell & Elliott*, for appellants :

This court has decided that a new will not be granted on mere weight of evidence, but only where the case is so clear as to shock the sense of justice "at first blush," and has gone so far as to apply the doctrine to a finding of the court sitting as a jury, which is not based on the same foundation of reason. The same reason exists for reversing the finding of a sole judge, as for reversing the opinion of a judge on questions of law. The Statute never contemplated fixing the seal of infallibility on a judge sitting as a jury. The same principle might apply to Chancery proceedings, but it has been held that when the facts are before this court in writing, the same as below, this court will reverse. 34 *Ark.*, 212 ; 33 *Ark.*, 651.

The finding was not only contrary to the weight of evidence, but absolutely to all legitimate evidence, and such a verdict as would shock the sense of justice of any fair-minded man.

The declaration of law, if given to a jury, would be so clearly erroneous as to demand a reversal.

Bell & Carlton v. Welch, Adm'r.

*U. M. Rose*, for appellee:

This court will not reverse on the weight of evidence.

Plaintiff was not precluded from denying anything in the letter to Cockrill, because he had introduced it in evidence. 14 *Ark.*, 442.

This court will not set aside the finding of a court sitting :as a jury, unless there is a total want of evidence to support it. 21 *Ark.*, 306.

The original agreement with Ashley was abrogated, a cash ·fee being substituted, *payable out of the rents*.


EAKIN, J. Welch, as administrator, sued Bell & Carlton upon an account for moneys collected by them as attorneys, and recovered the sum of $2130. Pending the suit ·Carlton died, and his executrix was made a party.

The defendants resisted the claim, setting up, by way of ·defense and set-off, matter substantially as follows:

They say that in the year 1858, they were employed by Mary E. Ashley, who then represented said estate, and was the sole legatee, to begin and prosecute a suit in ejectment to recover a certain tract of land for the estate, which was then adversely held, and had been in the possession of the adverse claimant for more than fifteen years. That they did so under an agreement that they should have for their services one-half of all that might be recovered, That they prosecuted it successfully, both in the Circuit Court and in the Supreme Court, on appeal; and again in the Circuit Court, to which it was sent for an inquiry as to damages. That besides the land, which was very valuable, they recovered and collected damages to the amount of $2200, being the same for which they are now sued. That pending the suit, said Mary E. Ashley died, and plaintiff Welch, her successor, refused to carry out the contract. That Carlton,

one of the partners, had an interview upon the subject with George C. Watkins, who was then the agent and attorney for the estate, in which he claimed a fee of $2000 ; and that he finally agreed to accept, and said agent agreed to pay said sum of $2000, in lieu of an interest in the property recovered, and also consented to look for remuneration out of the damages to be thereafter recovered. They claimed the right to retain so much of the damages as may be required to satisfy their claim for such fees, and for costs by them expended on behalf of the estate. They also plead, by way of set-off, that Welch was appointed administrator during the pendency of the ejectment, and accepted the services, and they claim said fee on account of said services. It is conceded that the sum of $500 has been paid, and that defendants are liable for so much of the damages collected as they may not have the right to retain for fees and costs.

The cause was submitted to the court for trial of the facts. The evidence was conflicting. The statements of parties on both sides, including Carlton's in his lifetime, and divers letters also, passing between them in the course of negotiations, were admitted with a freedom which indicates an earnest desire on both parts to have all the circumstances fairly presented.

The plaintiff, Welch, testifies that he was unwilling to pay the conditional fee claimed. That under advice and directions of Watkins, he paid to Bell the sum of $500, pending the appeal in this court, and offered to pay him $500 more out of any damages to be finally recovered ; and that Bell agreed to that, pronouncing it "all right" at first, but afterwards informing him that his partner, Carlton, would not agree to it, whilst acknowledging himself that the agreement was as above stated. Welch says further, that he had never himself employed Bell & Carlton in the

business; that Watkins & Rose were the attorneys of the estate, and that in paying said $500, and in agreeing to pay the further sum for like amount, he did so on Watkins' instruction, and not in discharge of any obligation on his part to the defendants.

Upon the other hand, Bell positively denies having received the $500 upon any such agreement for a settlement, but says he did agree to put the claim of the firm on a cash basis, and to fix it at $2000. He says that he further consented to make the remainder depend upon the collection of damages in the suit, and that such was the agreement at the time.

It is further apparent, from the evidence, that the result of the suit was of a very doubtful nature; that Watkins had not sufficient confidence in it to make him deem its prosecution advisable; and that he had nothing to do with it, or in the employment of Bell & Carlton; that the defendant had been a long time in possession, much beyond the period of limitations; that the proof of his holding, in conformity with Ashley's claim, had been lost, and that the property was of such value as to make $2000 a very cheap estimate of one-third, even, of the property, with the damages recovered. It may be mentioned, in passing, that Bell's recollection of the proportion they were to receive was only one-third, instead of one-half, as stated in the pleadings, and testified to by Carlton. The prosecution of the suit seems to have required a great deal of professional skill and labor. It lasted through a series of years, and was followed by Bell & Carlton into this court; and back again for the collection of the damages, out of which they now seek to retain their fees. More than that, it was necessary to file a bill of discovery, in aid of the suit, at law. These services were all rendered at the risk of defendants, who were to receive nothing on failure. We are strongly

impressed with the conviction that the amount which the plaintiff testifies that Bell was content to accept, was grossly inadequate to the services rendered upon such precarious conditions, and far below what Mrs. Ashley, in the first instance, would have been willing to allow in case of success.

1. PRAC-
TICE IN
SUPREME
COURT:

Finding
of Circuit
Court
when jury
waived,
conclusive
as verdict
of jury.

Nevertheless, the court, a jury having been waived, was the judge of the facts ; and, with competent evidence on both sides, had the same right to determine them as is accorded to a jury. We could not disturb the finding without violation, not only of past precedents, but of a sound, general principle. If the court had based its judgment on that finding, believing that the testimony of Welch was correct, and that Bell was mistaken in his recollection of the the exact value of the agreement, the firm might be held bound by the compromise, and could retain no more than the $500 which the plaintiff was willing to allow. A judgment rendered on such facts could not be held erroneous.

But the declarations made by the court for the plaintiff, and refused on the part of defendants, do not render it at all certain that it really found the facts as above indicated, or attempted to reconcile the discrepancies of testimony, or to determine, between that of Welch and Bell, which was really true. If the fact of the compromise was not found, it cannot support the judgment ; and we must look to the grounds upon which the court really based its judgment, to see of there be error in its views prejudicial to defendants.

All which the judgment itself indicates, upon this point, is : that the court, having heard all the evidence adduced, and the argument of counsel, finds "that the plaintiff is entitled to recover of said defendants the sum of," etc., and "it is

therefore ordered, considered and adjudged," etc. This was no finding at all, and the uncertainty and embarrassment we now feel in determining the real grounds of the decision, illustrates the wisdom of the Code in requiring the court, in questions of fact, "to state, in writing, the conclusions of fact found, separately from the conclusions of of law." As the counsel upon neither side insisted upon it, nor excepted to the omission, the failure cannot be held for error, but it is bad practice where the parties have not made up their minds in advance to rest upon the decision of the court as final. <span style="float:right">Failure of Court to find facts; when waived.</span>

The declarations of law given and refused afford us some light. At the suggestion of plaintiff, the court declared that there was no showing upon the evidence of *any valid contract* between Mary Ashley, as executrix, etc., upon which defendants can rely to sustain the set-off herein ; and that as there was no evidence as to any agreement as to the value of the services, the claim of defendants for a set-off could only be established by independent proof of the value of such services. To this the defendants did except ; and on their part asked the court to declare that the evidence introduced was sufficient to sustain the set-off herein. This the court, of course, refused, being inconsistent with the declarations of law. <span style="float:right">2. ADMINISTRATORS ETC.: Employment of attorneys.</span>

There was a paragraph in the answer setting up a *quantum meruit*, and it is quite clear from the declarations above set forth that the court did not deem it at all necessary to find either way upon the supposed compromise. The court must have considered, 1st, that the executrix had no power to make such a contract as that proved, with the attorneys, and, 2nd, that the court had no power, upon being advised of the actual rendition and nature of legal services, to judge of their value without proof *aliunde*. As the judg-

18–38

ment seems to have been based on these views, justice requires their examination.

The estate was large and solvent.    There is no proof of any debts.   Mrs. Ashley was executrix and sole legatee, managing the business through an agent for her own benefit, as we must presume.   That she could have bound herself individually to the attorneys for legal services, admits of no question.   Could she bind the estate in such manner as to be obligatory upon the administrator *de bonis non*, with the will annexed after her death?   That was the position occupied by the plaintiff.   The contract was never directed by, nor reported to and confirmed by, the Probate Court, which would have certainly rendered it valid beyond question.

Construction of the Statute.

The *Revised Statutes* (*chap.* 4, *secs*, 174 *to* 176) authorized the Probate Courts, when deeming it necessary for an executor or administrator to employ an attorney to prosecute or defend a suit concerning the estate, to allow said attorney to receive a compensation, at a rate fixed by the act, to be paid as expenses of administration, and provided that "no attorney's fee shall be allowed any executor or administrator unless for prosecuting or defending a suit under the directions of the court."   We are called upon to give the true construction, scope, and bearing to this act.

By the common law and English statutes, as adopted in this State, executors, as such, whilst they might be devisees in trust under a will, had otherwise no interest in or control of real estate.   Upon the death of the owner it passed at once to the heirs or devisees.   Our Revised Statutes modified this in so far as to make it assets in the hands of the executor or administrator, and to clothe them with the possession, but only for a specified purpose—that is, "the payment of debts."   Subject to this charge lands still pass from the deceased immediately by descent, or on due probate of the will, by devise.

Bell & Carlton v. Welch, Adm'r.

Mrs. Mary Ashley is described as "sole legatee." The term is generally used to describe those to whom there has been a bequest of personal property, but it may include a devise of real estate also. (*See Bouvier in verb.*) In this case it is so meant. The land for which ejectment was brought belonged to Mrs. Ashley as her own property, subject to an account by her for the benefit of creditors, and no others. She was not required to include it in her inventory. The attorney for the estate seems not to have considered the claim worth the risk of prosecution. She, acting for herself, had then the right, in the protection of her own interest, to save what planks she could from the wreck, and to make such contract for the purpose as she might deem advisable. The contract could not be made by her in her character of administratrix, but it was valid against her as devisee and owner. When the *fruits* of the litigation should come into her hands she would be liable to account for *them*, but not for what she never had. Let us suppose that she lived, that the contract was in good faith, and that the litigation had been closed and the proper proportion of money and land allowed to the attorneys by partition. Can it be supposed that she could have then turned around in her character of executrix and sued the attorneys for restoration of their portion, on the ground that as executrix she could not make such a contract, that she was chargeable to the estate for the whole value of the land and damages recovered in the suit, and the law did not, under the circumstances, allow her any credit for fees? And this, too, after the attorney for the estate, who represented her as executrix, had declined to prosecute the claim? And if she could not, upon what better right can the administrator *de bonis non* after her death do so, or what is equivalent in effect? To give the statute such scope as this would be attended with much absurdity.

If there be any fraud, that stands upon a different footing.   But none is charged, nor can any be reasonably suspected.   If she were guilty of waste, as executrix, it con-cerns the creditors and her bondsmen.   The administrator *de bonis* is only chargeable with the administration of what does, or should come to his hands, which in this case is the net results of the litigation.   Indeed the whole question of creditors may be left out of consideration.   The estate was a large one, and solvent, and no debts whatever are shown by the record.

If these views be not sound what is to become of a devisee of lands adversely held?   Must he stand paralized, and lose the benefit of the bounty, if the executor or administrator should not need the property for the payment of debts, and should very naturally refuse to enter upon a litigation that did not concern him, or those whom he represented. If he be poor must he have no counsel upon the credit of his contingent interests?   He could not have if the fees as soon as earned could be taken from the counsel by the representative of the estate, on the ground that he was entitled to take control of the whole proceeds of the suit, and there could be no valid contract for fees not sanctioned by the probate court.

We think the scope and design of the statute was to regulate the allowance of fees to representatives of estates, *out of sums for which they may be chargeable*, and that it has no application to a contract made in good faith by the devisee and owner of the land, with counsel, for its recovery.   We think such a contract, unattended with fraud, made by one whose whole interest prompts him to sacrifice as little as possible, is valid, and that the representative is under no obligation to collect even for the payment of debts, and certainly in no other case, more than the net results of the litigation to the devisee.   And this cannot be otherwise

when the character of devisee and executrix are at the time
united in the same person ; nor where the character of repre-
sentative is transferred afterwards to another, as · in this
case to Welch.   The court erred in declaring that no valid
·contract for fees existed between Mrs. Mary Ashley and
defendants.   Upon this point the proof of the fact was
indisputable.   The only doubt is as to the proportion ·
·defendants were to receive.   It was certainly not less than
a third.

Upon the second point, regarding the *quantum meruit*, 3. ATTOR-
                                                        NEYS'FEES
on the set off.   As a matter of law, the court adopted   Jury can
                                                         assess on-
the rigid rule, which would certainly have been applicable ly on proof
in a jury trial—holding that proof was required, not only of
the fact that the services were rendered. and their nature
and extent, but also of the value of the services.   This is
usually had by the testimony of attorneys as experts.

In this case all the matters in controversy were submitted
to the court.   There had been throughout a remarkable
·disregard of technicalities, as to the admission of evidence ;
such however, as might have been expected from parties of
their intelligence and standing, anxious on one part only to
discharge a fiduciary trust ; and on the other, to claim what
· might be justly and honorably retained.   Doubtless they
both intended, that if the court found it necessary to con-
sider the question of *quantum meruit* at all, it should fix
the value of the legal services, not only by such light as
the proof would afford, but also from its general knowl-
·edge and experience of usual charges in such cases, calling
to its aid, if it seemed advisable the testimony of other
attorneys ; or at least suggesting leave to the parties to
introduce them.   We think the court should have done
this, in this particular case, as the better practice, although
we waive any decision here as to whether or not the court
could have taken judicial cognizance of the reasonable value

of stated professional services, concerning property, the value of which, and of the results of the services, were reasonably shown.

These remarks concern the view of the law, as expressed by the court. We think it was mistaken, however, in supposing that there was no proof whatever of the value of the legal services rendered by Bell & Carlton. We notice in the transcript divers indications of their value which might have supported some positive finding. It may suffice, for instance, to cite the statement of Garland, included in Carlton's statement, all of which was admitted without objection, that he would not have rendered the services in question for less than $2000. There were other indication, also, very much tending to show that the services were of greater value than the amount which the plaintiff was willing to concede.

Upon the whole case we think there should be a new trial, and that it was error to refuse it.

Reverse and remand to that end.

