GRAY *v.* FORD, BACON & DAVIS, INC.

4-8035 198 S. W. 2d 508

Opinion delivered December 23, 1946.

*U. A. Gentry,* for appellant.

*James T. Gooch* and *Warren E. Wood* and *Griffin Smith, Jr.,* for appellee.

ROBINS, J. Appellant brought this suit to recover from appellee $1,602.67, which he claimed as "reasonable compensation" for certain overtime work. By amendment to his complaint he averred that he did not seek the benefit of the Federal Fair Labor Standards Act, that his contract was not in writing and that he could not state the name of the representative with whom he had made his contract of employment.

The answer was a general denial.

The case was tried before the lower court, a jury being waived. The evidence disclosed that about October 9, 1941, appellant was employed by appellee as "zone foreman" at the ordnance plant at Jacksonville, Arkansas, at a weekly salary of $70. On November 24, 1941, he was promoted to the position of "area supervisor" at a weekly salary of $80, which was, on February 2, 1942, increased to $85 per week, and on March 16, 1942,

was increased to $95 per week. He was paid each week by check on the back of which, immediately above appellant's endorsement, there was printed the following: "Endorsement of this check by payee constitutes a receipt in full of the sum appearing under the head of net amount due for wages covering the period and class of work performed as shown on the face of this check."

Appellant's version of the employment agreement was as follows: "I talked to Mr. Green and at first—the day I went out there I didn't accept—or didn't put in an application for employment for the reason that it was seventy dollars a week and they told me it was only forty hours a week and later on they thought the work hours would be increased and our pay accordingly and I told him I would let him know the next day and the next morning on those bases, being here near home and all, I decided I would accept all those conditions and I went back out and Crowley got me into the employment office and I filled out the regular application, showing the experience and qualifications and so forth, and as far as the contract, I didn't see any contract, any written contract, just an application for employment and I was accepted, notified immediately it was acceptable and I reported to Mr. Crowley and Mr. Green. . . . Q. Did anyone ever talk to you and tell you the number of hours that you were supposed to put in other than the information you got from Crowley and Green? A. No, sir. . . . Q. All right, Mr. Gray, what I am talking about, at the time you began you had this information as to when you would check in and check out, which was eight hours? A. Yes. Q. And after that they increased the hours by notification and it was suggested you increase your hours from fifty to fifty-four, or whatever it was. Did all of your men work those hours when it was increased? A. Yes. Q. Do you know whether they were paid overtime when it was increased? A. I don't think the weekly men were; the hourly men were. Q. The laborers were paid overtime? A. Carpenters. Q. And you men who were construction foremen were not paid for overtime; is that right? A. Yes."

Appellant admitted signing what was designated as an "Assignment Authority" at the time he began work. This instrument was addressed to appellant, signed by appellee and the body of it was as follows: "You are to report for work at once to J. J. Green, Foreman in area, General, as Zone Foreman, Rate, $70 per week."

Appellant introduced as a witness Frank Whittle, who was in charge of appellee's Little Rock office. This appears in his testimony: "Q. What was the salary rate that he was employed, Mr. Whittle? A. Seventy dollars a week for seven day week."

Mr. Roy H. Donnell, witness for appellee, introduced a record showing the actual number of hours appellant worked, which was, in some instances, more than forty hours per week, and further showing that as to several weeks, when appellant worked for only part of a week, he was paid less than $70, the calculation for his pay apparently having been made on the basis of forty hours for a week's work.

In testifying in rebuttal appellant stated: "Q. Mr. Gray, there has been introduced in evidence—I don't know what to call this—Exhibit '4'—which purports to show the names of certain employees, including your own, the base salary and the base hours per week in which you are classified under a symbol marked 'A' and the testimony is to the effect that that classification given to you meant that you were subject to call seven days a week. Please state if you ever had any information substantially to that effect at the time or before or since your termination with the defendant in this case. A. I didn't have any information at all to that effect at the time I was hired in and for quite a while after. . . . Q. The information, was it just limited to the fact that you were not supposed to get any pay for any overtime? A. That is right. Q. Were you informed at that time, as stated here by the witness, that you were subject to call seven days a week, if they wanted to require it every day of the week? A. Not when I hired in, no, sir."

The lower court made findings of fact to the effect that appellant was employed for a work week of unspecified hours and that by accepting the weekly salary checks appellant "acquiesced in or ratified the work week of unlimited hours." On these findings of fact the lower court made conclusions of law that acceptance by appellant of the weekly salary checks constituted "full accord and satisfaction" and by reason thereof appellant was estopped from claiming further compensation.

For reversal appellant argues that the defense of accord and satisfaction was not available because it was not pleaded by appellee and further that the evidence was not sufficient to establish such defense. We do not find it necessary to determine whether either of these contentions of appellant is well founded.

Appellant had the burden to show that his contract of employment was for a work week of forty hours, with the right on his part to additional compensation for overtime. The lower court, in its first finding of fact, found against appellant as to this essential element of his case. This finding, not being without support in the testimony, has the conclusive effect of a jury verdict. *Obermier, Freidlander & Co.* v. *Core, Thompson & Co.,* 25 Ark. 562; *Bell & Carlton* v. *Welch,* 38 Ark. 139; *Jones* v. *Glidewell,* 53 Ark. 161, 13 S. W. 723, 7 L. R. A. 831; *Dixon-Rogers Trading Company* v. *O. O. Scroggins & Company,* 136 Ark. 33, 206 S. W. 49; *Connelly* v. *Swilling,* 167 Ark. 677, 266 S. W. 266; *Johnson* v. *Spangler,* 176 Ark. 328, 2 S. W. 2d 1089, 59 A. L. R. 899; *Harvell* v. *Matthews,* 189 Ark. 356, 72 S. W. 2d 214; *Friedman* v. *Short,* 201 Ark. 723, 147 S. W. 2d 11.

Since, according to the lower court's finding, appellant failed to establish any liability to him, on the part of appellee, for additional compensation, it was unnecessary for the lower court to determine whether the defense of accord and satisfaction was available or was sustained by the evidence; nor is it necessary for us to consider these questions here.

The judgment of the lower court is affirmed.

The Chief Justice did not participate in the determination of this case nor attend that part of the Court's conference at which the appeal was discussed and decided.