FARM BUREAU MUTUAL AUTOMO-
BILE INSURANCE COMPANY,
Plaintiff,

v.

Kenneth A. MARR, Defendant,

and

Angelina Carfagno, Administratrix ad
Prosequendum of the Estate of Philip
H. Carfagno, deceased, and as General
Administratrix of the Estate of Philip
H. Carfagno, deceased, Intervenor.

Civ. A. No. 1104-52.

United States District Court,
D. New Jersey.

Jan. 6, 1955.

Bleakly, Stockwell & Zink, by William S. Zink, Camden, N. J., for plaintiff.

Raymond Del Tufo, Jr., U. S. Atty., Newark, N. J., Charles H. Nugent, Asst. U. S. Atty., Camden, N. J., for defendant.

Brown, Connery, Kulp & Wille, by Thomas F. Connery, Camden, N. J., for intervenor.

MADDEN, District Judge.

This is an action commenced under the Declaratory Judgments Act, Title 28 U.S.C.A. § 2201, to determine the liability or rights of plaintiff, Farm Bureau Mutual Automobile Insurance, upon a policy of insurance issued February 26, 1951 to defendant, Kenneth A. Marr, upon a 1951 Willys Station Wagon owned personally by Marr.

The policy contained the standard clause of automobile public liability policies known as the "Use of Other Automobiles" clause and is set forth in the footnote.[1]

Marr is the Agent in Charge of the Philadelphia, Pa. Customs Office of the United States Treasury Department and has been since 1949. On the night of October 24, 1951, and while the policy on the Willys was in force, Marr while driving a 1949 Ford, owned by the Government and assigned to his office, upon official Government business was involved in an accident which resulted in the death of one Philip H. Carfagno, represented here by the intervenor, and injury to others. Suit has been instituted both in the State Court and in this Court as a result of such accident. It is to determine the liability of the plaintiff insurance company for the death and injuries resulting from such accident under the terms of its policy that this action is brought.

The company argues that it is exempt from liability because the car Marr was driving at the time was one "furnished for regular use to the named insured" and excepted from coverage by the terms of the policy. The defendant and intervenor argue that such phrase of exclusion does not apply to the particular facts and circumstances of this case.

The matter was tried to the Court without a jury and the sole question for determination is, "Was the car Marr was driving at the time and place in question one 'furnished for regular use' to Marr?" If it was it comes within the exclusion terms and the company is not responsible. If it was not then the company is responsible upon the terms of the policy.

At the outset it might well be said that a reading of the cases discloses that no hard and fast rule has been nor in the opinion of this Court can be established for determining this question but that each case must stand or fall upon examination of the facts in the particular case before the Court. The best that can be done is to observe the signposts that aided other Courts in determining this question.

For example, the District Court of Appeals of California in Comunale v. Traders & General Ins. Co., 116 Cal.App. 2d 198, 253 P.2d 495, 498, held that an insured who had hired a truck from his brother for the sole purpose of driving

1. VI. Use of Other Automobiles. *If the Named Insured is an individual who owns the automobile classified* as 'pleasure and business' or husband and wife either or both of whom own said automobile, *such insurance as is afforded by this policy* for bodily injury liability, for property damage liability and for medical payments *with respect to said automobile applies with respect to any other automobile,* subject to the following provisions:

"(a) With respect to the insurance for bodily injury liability and for property damage liability, the unqualified word "insured" includes (1) such Named Insured, (2) the spouse of such individual if a resident of the same house and (3) any other person or organization legally responsible for the use by such Named Insured or spouse of an automobile not owned or hired by such other person or organization. Insuring Agreement III, Definition of Insured, does not apply to this insurance.

"(b) *This insuring agreement does not apply:*
"(1) *to any automobile owned by, hired as part of a frequent use of hired automobiles by, or furnished for regular use to the Named Insured or a member of his household other than a private chauffeur or domestic servant of the Named Insured or spouse;*
"(2) *to any automobile while used in the business or occupation* of the Named Insured or spouse except a private passenger automobile operated or occupied by such Named Insured, spouse, chauffeur or servant;
"(3) to any accident arising out of the operation of an automobile repair shop, public garage, sales agency, service station or public parking place;
"(4) under coverage G unless the injury results from the operation of such other automobile by such Named Insured or spouse or on behalf of either by such chauffeur or servant, or from the occupancy of said automobile by such Named Insured or spouse."

to and from work for a period of ten days and for no other purpose did not constitute a furnishing "for his regular use".

And in Vern v. Merchants Mutual Casualty Co., Sup., 118 N.Y.S.2d 672, 674, the Supreme Court of New York, Appellate Term, First Department, held that the same provisions of a policy as here in question did not cover the insured who had hired an automobile for one month while away from home. There the Court said:

"The purpose of the clause is to cover casual or occasional use of other cars. Any other interpretation would subject the insurance company to greatly added risk without the payment of additional premiums. *It is the availability of the car and the number of times it is used that should be the criterion.*" (Emphasis supplied.)

In Farm Bureau Mutual Automobile Ins. Co. v. Boecher, 48 N.E.2d 895, 896, the Court of Appeals of Ohio held that the insured who was an automobile salesman and drove the used cars of his employer under a blanket authority of using the cars for demonstration purposes, or even on occasions taking them home, was not covered by the policy on his own individual car which had a clause similar to the one presently before the Court. And the Court, noting that it was the first time that he drove this particular car, said:

"We believe this would be true as to any automobile in the group of used cars, whether or not it was the first time that he was driving it, because, although he might not customarily or frequently drive any specific car in the group, each and all of these cars were furnished to him for his regular use, either in the business during the day or if he desired to drive home at night."

■ In Rodenkirk for Use of Deitenbach v. State Farm Mutual Auto Ins. Co., 325 Ill.App. 421, 60 N.E.2d 269, 274, the Appellate Court of Illinois held that

the clause did not cover the insured while driving another car which had been placed at the disposal of his daughter and himself by the daughter's boy friend when he entered the Army. There the Court said:

"It is evident that the purpose on the part of the company in extending the driver's regular insurance without the payment of any additional premiums would apply to the occasional driving of cars other than his own, but would be inapplicable to an automobile furnished to the insured for his regular use."

In speaking of the words of exclusion "furnished for regular use to the named insured" the District Court of Appeal of California in Pacific Automobile Ins. Co. v. Lewis, 56 Cal.App.2d 597, 132 P.2d 846, 848, said:

"It is unnecessary to hold that the words 'regular use' as used in these policies referred to an exclusive use. But 'regular use' reasonably suggests a principal use as distinguished from a casual or incidental use. * * * Assuming that the use of such a car may be regular without being exclusive, there are other elements which may be considered in determining the meaning intended by the rather broad and not very explicit language used in these policies to set forth the exception to the coverage otherwise provided. Whether an automobile is furnished by another to an insured for his regular use may reasonably depend upon the time, place and purpose for which it is to be used. One furnished for all purposes and at all times and places would clearly be for his regular use. *One furnished at all times but strictly for business purposes alone could hardly be said to have been furnished for his regular use at a time and place when it was being used for personal purposes.* It may be assumed that when a car is furnished all of the time for business purposes, with permission to use

the same for incidental personal purposes, *all within a certain area, the car might be said to be furnished for regular use within that area.* But when a car thus furnished for such a use is driven to a distant point on one occasion, *with the special permission of the one furnishing the car,* that particular use would hardly seem to be a 'regular use' of the car. It cannot be said, as a matter of law, that such a use on a particular occasion, which is a departure from the customary use for which the car is furnished, is a regular use within the meaning of these clauses of the policies." (Emphasis supplied.)

■ The purpose of this extended coverage is succinctly stated by Judge Chesnut, U.S.D.C. of Maryland, in Aler v. Travelers Indemnity Co., 92 F.Supp. 620, at page 623:

"The general purpose and effect of this provision of the policy is to give coverage to the insured while engaged in the only infrequent or merely casual use of an automobile other than the one described in the policy, but not to cover him against personal liability with respect to his use of another automobile *which he frequently uses or has the opportunity to do so.*" (Emphasis supplied.)

The United States Court of Appeals of the Sixth Circuit in sustaining the action of the District Court in dismissing the application of the insurance company in Travelers Indemnity Co. v. Pray, 6 Cir., 204 F.2d 821, 825, where the son who was the insured in question was driving the father in the father's car with the father's permission, said:

"In our judgment, it is reasonable and just to hold the insurer in the policy under construction liable to the insured, who was, at the time of the accident, operating his father's car—not as a part of the regular, frequent, or customary use, *but only by special permission on a particular occasion.*" (Emphasis supplied.)

The signposts that are indicated to this Court from the foregoing are:

1. Was the use of the car in question made available most of the time to the insured?

2. Did the insured make more than mere occasional use of the car?

3. Did the insured need to obtain permission to use the car or had that been granted by blanket authority?

4. Was there a purpose for the use of the car in the permission granted or by the blanket authority and was it being used for such purpose?

5. Was it being used in the area where such car would be expected to be used?

An examination of the facts of the present case discloses the following:

As has been stated, Marr was the Agent in Charge of the Philadelphia Customs Office. There were four additional agents under his supervision. The area covered by his office was roughly described as the Delaware River waterfront on both sides of the river from Wilmington, Delaware on the South, to Trenton, New Jersey on the North. Four Government cars were assigned to the Philadelphia office for Government work under Marr's supervision, of which the Ford in question was one. These cars were maintained on a pool basis and any of the agents, including Marr, could use any of the cars at any time as Government work required. The keys were left in the cars if they were in the garage for the convenience of the garage attendant, otherwise the keys were placed on the top of a desk in the office for everyone's use. The other agents used the cars more than Marr because the nature of his work was more supervisory. He had driven one or more of the cars of the pool about fifty times between January 1, 1951 and the time of the accident, October 24, 1951, according to his best estimate. No records were kept or produced. One of the agents under Marr lived in the same

neighborhood in Haddonfield, New Jersey and if he was taking a Government car home in the evening, so as to be accessible for night calls or morning inspection of some of the piers on the Jersey side, this agent would take Marr home, otherwise Marr went home by public transportation except on a few occasions when it was necessary for him to take the car home on Government business. On the night in question Marr had been using the Government Ford in Philadelphia with another agent. He dropped the other agent off at the office and started home in the Ford. It was necessary to take the Ford on this occasion because the agent who sometimes took him home was assigned to go the next morning to the seashore area to investigate some cases and would not be going to Philadelphia. Marr had to be available for night calls from the riverfront and, if anything arose, to have a car available for the business that needed attention. It was on his way home to Haddonfield, New Jersey that the accident in question arose.

▮ We, therefore, come to consider the signposts and to what conclusion they point:

1. Was the use of the car in question made available at most of the time to the insured? Not only must this be answered in the affirmative but in addition other Government cars were available for his use such as the Collector of Customs or the Narcotics Bureau (transcript page 26), if all of the four cars were being used by the other agents and Marr needed a car.

2. Did the insured make more than mere occasional use? It is felt that fifty times in ten months is a little more than occasional to say the least.

3. Did the insured need to obtain permission to use the car? Obviously not.

4. Was the car being used for business purposes for which authority had been granted? Yes.

5. Was it being used in the area where it would be expected to be used? Yes.

It, therefore, becomes clear to this Court that at the time and place in question the car was one "furnished for regular use" to Marr and, consequently, within the exclusion provision of Article VI of the policy. As a result of this finding and conclusion by the Court the plaintiff company will have judgment in its favor.

Counsel may submit proposed findings of fact and conclusions of law. Upon the failure of counsel to so comply, the foregoing opinion shall be considered the fulfillment of Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A., and be findings of fact and conclusions of law.