THE TRAVELERS INDEMNITY CO. *v.* HYDE.

5-2225                                              342 S. W. 2d 295

Opinion delivered January 16, 1961.

[Rehearing denied February 13, 1961]

*Wright, Harrison, Lindsey & Upton,* for appellant.

*Gutensohn & Gutensohn,* for appellee.

SAM ROBINSON, Associate Justice.    This suit was filed by Imogene Hyde, administratrix of the estate of

M. D. Hyde, against appellant, The Travelers Indemnity Company, on a policy of insurance issued and delivered to Mr. Hyde. Among other things the policy provides to indemnify Hyde in a sum not exceeding $2,000 for medical expenses incurred due to injuries received while occupying an automobile. Hyde was injured while driving a motor vehicle on the 17th day of July, 1959, and died a few days later as the result of such injuries. The insurance company admits the issuance of the policy and that an accident occurred which resulted in the death of Hyde. The insurance company further admits the expenditure of a sum in excess of $2,000 for medical, surgical, X-rays, ambulance, professional nursing, hospital, funeral and burial expenses. But the company denies liability on the ground that at the time of the accident Hyde was occupying an automobile furnished for his regular use.

The case was tried before the court sitting as a jury, and from a judgment in favor of the administratrix the insurance company has appealed.

The parties stipulated as follows: "It is stipulated and agreed that at the time of the accident which resulted in the death of M. D. Hyde, he was driving a motor vehicle furnished and owned by his employer, Fort Smith Couch and Bedding Company. Said vehicle was assigned to M. D. Hyde for his exclusive use and was the only vehicle driven by him in the course of his employment by Fort Smith Couch and Bedding Company. This vehicle was a tractor and trailer used for hauling furniture for said Company to various parts of the United States in the course of business for the Company, and was never used at any time for the personal use of M. D. Hyde."

The controversial provisions of the policy provide: "The Travelers Indemnity Company . . . agrees with the insured . . . To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, X-ray and dental services, including prosthetic devices, and necessary ambulance,

hospital, nursing and funeral services: . . . To or for the named insured and each relative who sustained bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' caused by accident, while occupying or through being struck by an automobile.''

Under the heading ''Exclusions'' the policy also provides: ''This policy does not apply under Part II [Medical Payments] to bodily injury: . . . sustained by the named insured or a relative . . . while occupying an automobile . . . furnished for the regular use of either the named insured or any relative, other than an automobile defined herein as an 'owned automobile.' ''

Appellant contends that the truck Hyde was driving at the time he was injured was furnished for his regular use within the meaning of the exclusion provision and that the insurance company is therefore not liable. The sole point raised on appeal is whether the automobile was furnished to Hyde for his regular use within the meaning of the exclusion provision of the policy.

The provisions of the policy are ambiguous. First, the policy provides that the insured will be indemnified for medical expenses if he is injured while occupying an automobile. Here he was injured while occupying an automobile, but the policy further provides that the provision for medical payments does not apply if he is injured while occupying an automobile furnished for his regular use. These provisions of the policy render it ambiguous. Just what is meant by ''for the regular use of either the named insured or any relative?'' If ''for his regular use'' means personal use, it is one thing; if partly for his personal use and partly for the use of the employer, it could mean something else. If the insured was to use it in a certain area for one purpose, and he was injured while on a trip outside that area, for another purpose, then there could be a different meaning. Standing alone the terms of the policy are not sufficient to clear up the ambiguity, and the stipulation

is not sufficient to enable the court to say as a matter of law what the ambiguous provisions really mean. True, the stipulation states the truck was furnished for the insured's exclusive use. Perhaps it can be inferred that exclusive use means regular use. On the other hand, it could be exclusive without being regular. A jury could find that the wording in the policy "for the regular use of the insured" means personal use. This language certainly has that connotation. And the jury could reach the conclusion that the term means "for the benefit of the insured." If this construction were put on the language by a jury, then under the facts as set out in the stipulation the insured would be entitled to recover.

Some cases, such as *Davy* v. *Merchants Mut. Cas. Co.*, 97 N. H. 236, 85 A. 2d 388; *Home Ins. Co.* v. *Kennedy*, Del. Super., 152 A. 2d 115; *Voelker* v. *Travelers Ind. Co.*, 260 F. 2d 275; and *Farm Bureau Mutual Automobile Ins. Co.* v. *Marr*, 128 F. Supp. 67, have been decided on the theory that "for his regular use" means practically any use by the insured. In the *Farm Bureau* case the insured had never before driven the car in which he was injured, and there was nothing to show there was any probability that he would ever have driven it again, yet the court held the car was furnished for his regular use. We think the better view is expressed in *Pacific Automobile Ins. Co.* v. *Lewis*, 56 Cal. App. 2d 597, 132 P. 2d 846. There the court said: "Whether an automobile is furnished by another to an insured for his regular use may reasonably depend upon the time, place and purpose for which it is to be used. One furnished for all purposes and at all times and places would clearly be for his regular use. One furnished at all times but strictly for business purposes alone could hardly be said to have been furnished for his regular use at a time and place when it was being used for personal purposes. It may be assumed that when a car is furnished all of the time for business purposes, with permission to use the same for incidental personal purposes, all within a certain area, the car might be said to be furnished for regular use within that area. But when a car thus furnished for such a use is driven to a distant point on one

occasion, with the special permission of the one furnishing the car, that particular use would hardly seem to be a 'regular use' of the car. It cannot be said, as a matter of law, that such a use on a particular occasion, which is a departure from the customary use for which the car is furnished, is a regular use within the meaning of these clauses of the policies. A question of fact is presented which calls for an interpretation of the language of the policies relating to the facts involved.''

And in *Farm Bureau Mutual Automobile Ins. Co.* v. *Marr,* 128 F. Supp. 67, in holding that a similar provision in a policy presented a question of fact to be determined by the facts of the particular case before the court, the court pointed out certain signposts to be looked for, as follows:

''1. Was the use of the car in question made available most of the time to the insured?

''2. Did the insured make more than mere occasional use of the car?

''3. Did the insured need to obtain permission to use the car or had that been granted by blanket authority?

''4. Was there a purpose for the use of the car in the permission granted or by the blanket authority and was it being used for such purpose?

''5. Was it being used in the area where such car would be expected to be used?''

There are two principles of law firmly established in this State that apply here: (1) Provisions of a policy of insurance ''must be construed most strongly against the insurance company that prepared it, and if a reasonable construction could be placed on the contract that would justify recovery, it would be the duty of the court to so construe it.'' *Metropolitan Life Ins. Co.* v. *Guinn,* 199 Ark. 994, 136 S. W. 2d 681; *Phoenix Assurance Co.* v. *Loetscher,* 215 Ark. 23, 219 S. W. 2d 629; *Washington Fire & Marine Ins. Co.* v. *Ryburn,* 228 Ark. 930, 311 S. W. 2d 302. (2) Where a written contract is ambiguous, its

meaning is a question of fact for the jury and should be submitted to a jury. *Fort Smith Appliance & Service Co.* v. *Smith,* 218 Ark. 411, 236 S. W. 2d 583.

In the case at bar, undoubtedly the language "while occupying an automobile . . . furnished for the regular use of either the named insured or any relative" is ambiguous, and hence the true meaning of the language was a jury question. Here the cause was submitted to the trial court sitting as a jury, and the findings of the court have the same force and effect as a jury verdict. *Occidental Life Ins. Co. of Calif.* v. *Sammons,* 224 Ark. 31, 271 S. W. 2d 922; *Gray* v. *Ford, Bacon & Davis, Inc.,* 210 Ark. 995, 198 S. W. 2d 508.

Affirmed.

HARRIS, C. J., and WARD, J., dissent.

WARD, J., dissenting. First I wish to point out two respects in which I cannot agree with the majority opinion. I now refer to these as briefly as possible consistent with clarity and without setting forth the controversial clauses.

(a) At pp. 1021-1022 in the majority opinion, there is language which appears to assume the existence of ambiguity in the policy. This assumption is based on the fact that one part of the policy says the Company is liable if the insured is "injured while occupying an automobile," while another part says the Company is not liable if the insured is injured in an automobile provided for his regular use. Undoubtedly it cannot be said that an insurance policy is ambiguous merely because it contains a limitation clause. If this were true, then every insurance policy would be ambiguous. Therefore, we must start out with the proposition that if there is any ambiguity in the policy it is only in the limitation clause itself.

(b) The majority opinion misconstrues the effect of the holdings in every case cited in relation to the limitation clause here under consideration. I cannot help but feel certain that the majority, in considering the con-

troversial words "for the regular use of" are confusing the *purpose* of the use of the automobile with the *extent* of the use. All of these cases referred to above and cited by the majority deal only with the *extent* and not the *purpose* of the use of the automobile. In the *Davy* case nothing was said about the purpose but only the extent of the use of the taxicab. The holding in this case is directly opposite the holding in the majority opinion to the extent that there the taxicab was used not for his personal use but for the use of his employer. The same thing is true in the *Home Insurance Company* case where all of the discussion was relative to the *extent* of the use. And again, the holding in that case is contrary to the majority opinion. It is there said:

"Defendant agrees that he would be excluded from coverage if the pick-up truck had been furnished for his regular use. However, he argues, that 'furnished for regular use', under exclusion clause (d) (1) of Insuring Agreement V, means he was entitled to an indiscriminate and unrestricted, full and complete use of the truck, and since his use of the truck was restricted by his employer to a 'business use', it was therefore not furnished to him for his 'regular use'. Defendant then argues that 'for regular use' must mean indiscriminate and unrestricted use, . . ."

In rejecting the above contentions the court there said:

"If defendant is right, then he would be getting insurance on the Dodge and the pick-up truck for the price of the insurance on the Dodge alone. Every day, two vehicles could be on the road at one time, the Dodge driven by his wife, and the pick-up truck driven by him in his occupation, covered by one policy. This would be a bargain, and not one that was intended by the policy."

In the *Voelker* case the court considered only the *extent* and not the *purpose* of the use of the automobile. The gist of the reasoning given by the court is couched in the 3rd headnote which reads: "It is common knowledge that a greatly increased hazard against which the insured was protected under a liability policy would greatly increase

the premium for such coverage." It is too obvious for argument that the hazard would be the same regardless of the *purpose* for which an automobile is used. The holding in the *Farm Bureau* case is the same as in the other cases just mentioned. Again a good reason is given by the court where it said: "The purpose of the clause is to cover casual or occasional use of other cars. Any other interpretation would subject the insurance company to greatly added risk without the payment of additional premiums." In no way was the court concerned with the *purpose* of the use of the automobile but only with the *extent*. Likewise in the *Pacific Automobile Insurance Company* case, a careful study of the opinion reveals that the court was concerned only with the *extent* and not the *purpose* of the use of the automobile.

A careful and extensive research reveals that there is no court decision which sustains the position taken by the majority opinion. On the other hand there are several decisions, and two recent ones in particular, which are in point as to the terms of the policy and very similar to this case on the facts. *Home Insurance Co.* v. *Robert E. Kennedy, Jr.*, Del. Super., May 19, 1959, 152 A. 2d 115, cited above, and *George Moore* v. *State Farm Mutual Insurance Co.*, Miss., June 13, 1960, 121 So. 2d 125.

In the *Moore* case the decision also appears to be in point here and is contrary to appellee's contentions. The facts involved in the cited case were similar to the facts in this case and the pertinent parts of the policies are exactly the same. Appellant had a policy on his own automobile—a Family Policy — the same as here, and the same "Medical Payments" were involved. Also, there was the same "exclusion" involved there as here. Contained in the opinion is the following state of facts:

"For some two years prior to the accident later mentioned, insured was employed by Wade Tung Oil Company which owned some ten trucks. Insured drove trucks for his employer and had other duties, including operating a bulldozer, mechanical, tractor, and some carpenter work. He drove trucks for his employer two or three

times a week; sometimes he would haul machinery, and sometimes he would make trips to haul tung nuts. He was not assigned any particular truck the two or three trips a week he would make driving trucks. When he was not driving trucks, he would at times work on a truck as a helper.

The court, in holding there was no liability on the part of the insurer said:

"As stated, the obvious purpose of the exclusionary clause is to limit the extension of medical payments coverage to casual or infrequent use or occupancy of automobiles other than the one defined in the policy, in this case the insured's Chevrolet. It is regular use of other automobiles that brings the exclusionary clause into operation, . . ."

Following the above the court also stated: "there is no ambiguity in the policy."

There are, of course, many words in the English language which are susceptible to more than one interpretation. This does not mean that every sentence in which such a word is used is ambiguous. The normal and sensible thing to do is to look to the context to gather the intended meaning. The word "use" is such a word. Webster's small dictionary gives 10 different uses of the word. The thing that makes clear the intended use of the word in the policy is the fact that the liability of the Company would be the same regardless of the *purpose* of the use. Therefore it makes no difference in the case under consideration whether the insured was using the automobile to haul furniture for his employer or take his family to church.