78 N.J. Super. 404 (1963)
188 A.2d 637
AMERICAN CASUALTY COMPANY, A CORPORATION, PLAINTIFF,
v.
DEANNA LATTANZIO, BENJAMIN G. LATTANZIO, ANN LATTANZIO, LOUIS MATARANGOLO, AN INFANT BY HIS GUARDIAN AD LITEM, LILLIAN MATARANGOLO, AND LILLIAN MATARANGOLO INDIVIDUALLY, AND CORNELIUS H. GRONDIN, SR., AND CORNELIUS H. GRONDIN, JR., INDIVIDUALLY AND PARTNERS, T/A GRONDIN DETECTIVE AGENCY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 7, 1963.
*406 Messrs. Kristeller, Zucker, Lowenstein and Cohen, attorneys for plaintiff.
Messrs. Wilentz, Goldman, Spitzer and Sills, attorneys for defendants Deanna Lattanzio, Benjamin C. Lattanzio and Ann Lattanzio.
Messrs. Seaman and Williams, attorneys for defendant Matarangolo
Messrs. Strong and Strong, attorneys for defendant Grondin.
LABRECQUE, J.S.C.
In this case the plaintiff American Casualty Company seeks a declaratory judgment that a policy of insurance issued by it to Deanna Doros, now Deanna Lattanzio, does not insure Benjamin G. Lattanzio, her husband, in connection with a certain accident in which the defendant Louis Matarangolo, an infant, sustained injuries on July 25, *407 1960. The defendants Grondin are made parties as the asserted employers of Lattanzio at the time of the happening of the accident in question. The defendant Ann Lattanzio is made a party as the owner, and defendant Benjamin G. Lattanzio as the driver, of the vehicle involved in the accident.
The policy in question, which was denominated a family automobile policy, was originally issued on July 17, 1959 and was renewed on July 17, 1960 for an additional year. On May 28, 1960 Deanna Doros, the named assured, married Benjamin G. Lattanzio. By the terms of the policy the words "named assured" included her "spouse if a resident of the same household." The policy covered the operation of both owned and non-owned automobiles. A non-owned automobile was defined in the policy as: "An automobile or trailer not owned by or furnished for the regular use of either the named assured or any relative, other than a temporary substitute automobile." The policy specifically covered a 1951 Ford owned by Deanna Lattanzio.
On the day of the happening of the accident Benjamin G. Lattanzio, while operating a 1957 Lincoln car owned by his mother, was involved in a collision with the infant defendant Matarangolo, a pedestrian. Suit was instituted by Lillian Matarangolo, as guardian ad litem and individually, against Lattanzio, his mother Ann Lattanzio, and his part-time employers, the Grondins. Following service upon the Lattanzios in February 1962, the plaintiff denied coverage and filed the present suit. Its denial of coverage is premised upon its assertion that the Lincoln was an automobile "furnished for the regular use" of Benjamin by his mother, Ann, citing Farm Bureau Mutual Automobile Ins. Co. v. Marr, 128 F. Supp. 67 (D.N.J. 1955); Rodenkirk for use of Deitenbach v. State Farm Mut. Automobile Ins. Co., 325 Ill. App. 421, 60 N.E.2d 269 (App. Ct. 1945); and the dissenting opinion in Travelers Indemnity Company v. Hyde, 232 Ark. 1020, 342 S.W.2d 295, 298 (Sup. Ct. 1961).
From the testimony and exhibits before the court it appears, and the court finds, that prior to his marriage in May *408 1960 Benjamin G. Lattanzio resided with his mother in Woodbridge Township and was employed by the Post Office Department. He was also employed on a part-time basis by the Grondin Detective Agency. His brother Daniel resided in the same household and also was a part-time employee of Grondin.
The Lincoln automobile which Benjamin was driving at the time of the accident had been purchased by his mother, Ann Lattanzio, prior to the time that he began work for the detective agency. There were two other vehicles in the household, a Ford owned by Daniel and a truck owned by Mr. Lattanzio, the husband of Ann. The Lincoln had been used on occasion by Benjamin before he secured part-time employment with the agency. This use was generally granted upon a request made of the mother, who retained possession of the keys.
After having been accepted as a trainee by the detective agency, Benjamin continued to be allowed the occasional use of the car. While still a trainee he purchased a two-way radio with the probable intention of using it in connection with some phase of the detective business. With the mother's permission it was installed in her Lincoln.
After the marriage Benjamin and his wife moved to their own apartment. Thereafter, when he had occasion to use an automobile, he used her 1951 Ford, which was insured by the policy in question. The coverage of the policy was extended to him as husband of the named assured, Deanna.
On the evening of the accident he had an opportunity to put in several hours at his part-time job. By the time he received the call, his wife had already taken the Ford. He thereupon called his mother and was given permission to take the Lincoln. It was while returning home several hours later that he met with the accident which gave rise to the present suit.
In Farm Bureau Mutual Automobile Ins. Co. v. Marr, supra, cited by the plaintiff, an insurer was granted a declaratory judgment of nonliability on a policy which it issued to *409 the defendant. The policy extended coverage to a station wagon owned by the insured and also furnished additional coverage to the insured when driving other automobiles. As in the present case, the policy contained an exclusionary clause which provided that the additional coverage did not apply "to any automobile * * * furnished for regular use to the Named Insured * * *." The court found that the named insured, a federal agent, had several cars at his disposal in connection with his employment from which he was permitted to select any one for his use. On the occasion in question the insured was driving one of these cars to his home in order to enable him to respond to any night calls which he might receive. En route, an accident occurred. The case is clearly distinguishable on its facts and the result reached is in no wise controlling in the instant case. See also Farm Bureau Mut. Automobile Ins. Co. v. Boecher, 48 N.E.2d 895 (Ohio Ct. App. 1942).
Rodenkirk, for Use of Deitenbach v. State Farm Mut. Automobile Ins. Co., supra, upon which plaintiff also relies, was a case of first impression in Illinois. There a similar exclusionary clause was before the court. The car which the insured had been driving at the time of the accident belonged to a soldier who, prior to his entrance into the service, had entrusted it to his fiancee, the insured's daughter. Specifically, the court found that he had told her and the insured to use it "as they saw fit." (60 N.E.2d, at p. 274.) The court, in holding that the insured's use of the car was outside the limits of his insurance coverage, cited Farm Bureau Mut. Automobile Ins. Co. v. Boecher, supra, and noted that its decision was not controlled by the number of times the defendant had used the car but rather depended upon whether the car was furnished for his regular use.
It is a well settled general rule that if an insurance contract is so drawn as to be ambiguous or to require interpretation, any fair doubt as to the meaning of the terms should be resolved against the company which prepared the policy. If the language used is fairly susceptible of two different *410 constructions, one favorable to the insurer, and the other favorable to the insured, "the interpretation sustaining coverage must be applied." Mazzilli v. Accident & Casualty Ins. Co. of Winterthur, 35 N.J. 1, 7 (1961). In considering the construction of inclusory and exclusionary clauses in that case, the Supreme Court stated:
"* * * where the policy provision under examination relates to the inclusion of persons other than the named insured within the protection afforded, a broad and liberal view is taken of the coverage extended. But, if the clause in question is one of exclusion or exception, designed to limit the protection, a strict interpretation is applied." (at p. 8)
See also, Hunt v. Hospital Service Plan of New Jersey, 33 N.J. 98, 102, 81 A.L.R.2d 919 (1960); Marshall v. Equitable Life Assur. Soc., 116 F.2d 901, 135 A.L.R. 1225 (6 Cir., 1941), cert. den. 313 U.S. 575, 61 S.Ct. 1088, 85 L.Ed. 1533 (1941); Mutual Life Ins. Co. of New York v. Hurni Packing Co., 263 U.S. 167, 174, 44 S.Ct. 90, 68 L.Ed. 235 (1923); Travelers Indemnity Co. v. Pray, 204 F.2d 821 (6 Cir., 1953).
An exclusionary clause or definition, such as the one here involved, manifests an intention on the part of the insurer to protect itself from a situation whereby an insured could purchase a policy covering one automobile and be covered without qualification as to all automobiles available for his use. Annotation, 173 A.L.R. 901, 904 (1948); see also Rodenkirk for Use of Deitenbach v. State Farm Mut. Automobile Ins. Co., supra, and Vern v. Merchants Mut. Casualty Co., 21 Misc.2d 51, 118 N.Y.S.2d 672 (Sup. Ct. 1952). Thus, this type of policy extends coverage to the casual or occasional driving of automobiles other than those specifically covered without payment of an extra premium, while excluding the use of automobiles which are furnished for the regular use of the insured. Cf. Travelers Indemnity Company v. Hyde, 232 Ark. 1020, 342 S.W.2d 295 (Sup. Ct. 1961). The clause in question represents an attempt on the part of the insurer to strike a balance between the desire *411 of the insured to be covered, even though not always using the owned automobile, and its own right to receive payment of premiums based upon the risk presented by the number of automobiles operated. Cf. Lumbermen's Mut. Casualty Co. v. Pulsifer, 41 F. Supp. 249, 251 (D. Me. 1941). It has been held that the general effect of such a clause is to give coverage to the insured while engaged in only infrequent or merely casual use of the non-owned automobile, but not in respect to the operation of another automobile which he frequently uses or has the opportunity of using. Aler v. Travelers Indemnity Co., 92 F. Supp. 620 (D. Md. 1950).
Obviously, the determination in a particular case of whether the insured was driving a non-owned automobile which had been furnished for his regular use, and thus was excluded from the coverage afforded by his insurance policy, must be controlled by the factual situation presented. No hard or fast rule for the solution of the question appears to have been applied in the cases cited by counsel and none appears in the additional cases which have come to the court's attention. Thus in Comunale v. Traders & General Ins. Co., 116 Cal. App.2d 198, 253 P.2d 495 (D. Ct. App. 1953), the court held that the hiring of a truck by an insured from his brother for the sole purpose of driving to and from work for a period of ten days and for no other purpose, did not constitute a furnishing of the automobile for his regular use. In Vern v. Merchants Mut. Casualty Co., supra, a contrary result was reached where the insured had hired an automobile for one month while away from home. In Farm Bureau Mutual Automobile Ins. Co. v. Marr, supra, (128 F. Supp. p. 70), the court while acknowledging the impracticability of a hard and fast rule, found the following questions, among others, to be of assistance in determining the ultimate issue:
"1. Was the use of the car in question made available most of the time to the insured?
2. Did the insured make more than mere occasional use of the car?
3. Did the insured need to obtain permission to use the car or had that been granted by blanket authority?"
*412 Having in mind the intent and purpose of the clause in question, the issue to be determined is (1) whether the use of the car which the insured was driving was furnished to him, and (2) if so, whether it was furnished for his regular use. The frequency of the use made of the vehicle by the insured does not necessarily govern. The question is not whether he frequently used the vehicle but whether it was "furnished" for his regular use. Implicit in the use of the quoted word is the necessity for some prior arrangement or understanding concerning the use of the vehicle. Such an arrangement could be in the form of a blanket permission to use the vehicle generally or to use it for a specific purpose. Evidence as to the past history of the use of the automobile is of assistance in determining whether there was such an arrangement, but it is the condition which obtained at the time of the accident which governs, and evidence of the past use of the automobile must be related to this date. A requirement that specific authorization be obtained as a prerequisite to the use of the vehicle would sustain a finding that it was not "furnished" for his regular use. Likewise, evidence that the insured was without access to the vehicle or the keys required to operate it, would constitute strong evidence to the same effect. Assuming that the vehicle was furnished to him, it would remain to be determined whether it was furnished for his regular use. If the use for which the vehicle was furnished was an irregular, infrequent or casual one, it would not come within the exclusionary clause and hence would be covered by the policy.
In the instant case, the Lincoln automobile was not furnished to Benjamin Lattanzio, the insured, for his regular use. There is a total absence of proof of access to it during the period following Benjamin's marriage and his removal from his mother's home. The car continued to be kept at the mother's home. She retained possession of the only set of keys. Following his marriage and the establishment of his own home, Benjamin did not use the car at all until the evening of the accident. There was no blanket permission to *413 use the car either generally or for any particular purpose. On the contrary, Benjamin was required to and did obtain his mother's permission to use the vehicle on the night in question, which was in accordance with the manner in which he had obtained the use of the car on prior occasions. Over and beyond this the evidence negates any need for the regular use of the car by him. The use being made of the car on the night in question resulted from pure chance, i.e., a call to go to work at his part-time job after his wife had taken their own car.
By the terms of the policy in question, Benjamin Lattanzio, as the husband of the policyholder, was entitled to coverage with reference to bodily injuries arising out of the use by him of non-owned automobiles. Since the Lincoln was not furnished to him for his regular use, the clause of the policy which excluded from the definition of non-owned automobiles "furnished for the regular use" of the insured, is not applicable. Therefore, the operation of the vehicle in question at the time of the accident came within the coverage of the policy.
Judgment should be entered accordingly.