290 A.2d 408.

MICHAEL A. RICCI *vs.* UNITED STATES FIDELITY AND GUARANTY COMPANY.

MAY 2, 1972.

PRESENT: Roberts, C. J., Paolino, Powers and Joslin, JJ.

PAOLINO, J. The plaintiff brought this complaint for a declaratory judgment pursuant to the provisions of the Uniform Declaratory Judgments Act, G.L. 1956, ch. 30 of title 9, to determine his rights under a policy of insurance issued to him by the defendant insurance company covering two automobiles owned by him personally. The case was heard before a justice of the Superior Court sitting without a jury. After the hearing he rendered a decision granting the relief prayed for. The cause is before this court on the defendant's appeal from the judgment entered pursuant to such decision.

The record discloses the following pertinent facts. On April 15, 1967, the plaintiff, while operating a motor vehicle upon a public highway in the city of Providence struck a pedestrian. The motor vehicle was owned by Rolyn, Inc., a Rhode Island corporation of which plaintiff was the president. At the time of the accident plaintiff was returnng to his home in Cranston from a jewelry show at the Biltmore Hotel in Providence where his company had a display booth showing jewelry items manufactured and sold by it.

The automobile being operated by plaintiff at the time of the accident, to which we shall hereinafter at times refer to as the company car, was insured by defendant and had a policy limit of $20,000 for bodily-injury liability. This car was a 1966 Buick Riviera. As a result of the accident the pedestrian, one Emma Pakruder, sustained serious bodily injuries. She subsequently brought a personal in-

jury action against plaintiff. The defendant through its attorney, entered an appearance for plaintiff, Mr. Ricci, in that suit.

On the date of the accident plaintiff was a named insured under a family automobile policy which had also been issued by the defendant insurance company. This policy covered two motor vehicles, a 1965 Chevrolet Corvette Stingray and a 1965 Dodge Coronet, both of which were owned by him personally. The policy has bodily-injury liability in the amount of $50,000 and contains an agreement to pay on behalf of the insured all sums which the insured becomes legally obligated to pay as damages because of bodily injury, etc., and injury to or destruction of property, etc., arising out of ownership, maintenance or use of the owned automobile or any "non-owned" automobile. Insofar as pertinent here the policy provides that the following are insureds under Part I of the policy:

"(a) with respect to the owned automobile,
(1) the Named Insured * * *
"(b) with respect to a non-owned automobile,
(1) the Named Insured,
(2) any relative * * *."

The policy contains the following pertinent definitions:

" 'Named Insured' means the individual named in Item 1 of the declarations and also includes his spouse, if a resident of the same household;
* * *

" 'relative' means a relative of the Named Insured who is a resident of the same household;
* * *

" 'temporary substitute automobile' means any automobile or trailer, not owned by the Named Insured, while temporarily used with the permission of the owner as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing loss or destruction;
" 'non-owned automobile' means an automobile or trailer not owned by or furnished for the regular use

of either the Named Insured or any relative, other than a temporary substitute automobile."

In brief the family automobile policy covered the operation by plaintiff of a non-owned automobile not furnished for his regular use.

After the accident, plaintiff asked defendant to extend the coverage of the family automobile policy to the April 15, 1967 accident on the ground that at that time he was operating a non-owned automobile not furnished for his regular use. The defendant refused to do so and thereafter plaintiff commenced the instant action. The defendant filed an answer in which it denied that the family policy covered the operation of the company car operated by plaintiff at the time of the accident.

The plaintiff was the only witness to testify at the hearing in the Superior Court. The family automobile policy and certain documents establishing that the 1966 Buick Riviera was bought and paid for by Rolyn, Inc., were offered into evidence by plaintiff and admitted as exhibits without objection by defendant.

In direct examination plaintiff gave the following testimony. He lived in the city of Cranston and worked for Rolyn, Inc., which was his own company and was located in Providence. In 1967 he was president of the company and on April 15, 1967, he was involved in an accident while operating the 1966 Buick, which was owned by, and used for the business of, the company. The company owned no other vehicle at the time. The 1966 Buick was used to go to different jewelry shows and this was the only vehicle used to transport the company's line of costume jewelry from show to show.

His testimony in cross-examination is as follows. The car at that time was registered and owned by the company. His son, Douglas, who lived in North Kingstown, was in business with him in 1967. On the morning of the acci-

dent Douglas had driven the car to work as usual. On that morning plaintiff's wife had driven him to work in his own personal car. On occasion the plaintiff drove it to work. If plaintiff had errands to run he would drive it to work and would drive it home at night. On the night of the accident he left work and walked to a jewelry show at the Biltmore Hotel. Douglas had driven the car there. The plaintiff had not driven the car to any jewelry show that year or in 1966. After he had completed his business at the jewelry show that night he drove the company car home and that is when he struck the pedestrian. His son would drive it home on a regular basis and on occasion he (plaintiff) drove it home. He might drive the car home one day or two days a week; it sometimes varied; it might be two days one week and some weeks he never drove it at all. He also testified that some weeks he might drive it home three days a week, garage it at his house, and drive it back next morning.

In redirect examination he stated that during the years 1966-67 he used the company car for his own personal use on an average of twelve times a month. He testified that the company car was primarily used for the business of selling the jewelry his company manufactured; that Douglas did most of the selling; that he covered the northeast territory; and that the company car was used for that purpose.

The questions and answers during his recross-examination are as follows:

"Q Mr. Ricci, it is your testimony that you used the vehicle on an average of twelve times a month for your personal business and on occasion you would also use the vehicle for business purposes?

"A Yes.

"Q Frequently you would drive it home at night and drive it in in the morning, and while the car was at your place of business you could use the car

at any time you so desired as president of the corporation?

"A  Yes.

"Q  And it was there and available for your use at any time you so desired?

"A  If I had to go places, yes."

The defendant rested without presenting any evidence.

Having found that the 1966 Buick was not owned by plaintiff and that it was a "non-owned automobile" within the meaning of the family policy, and having further found that the case presented no "relative" problem since Douglas did not live with plaintiff, the trial justice concluded that the only issue before him was whether this automobile was furnished for the regular use of the named insured, that is, plaintiff, within the meaning of the family automobile policy.

In considering this question the trial justice observed that the evidence indicated that the car was most generally and frequently used by Douglas in the course of his sales activities on behalf of the company, that he usually drove the car to work, and that he used the car extensively in his sales work. He referred expressly to plaintiff's testimony about his use of the company car and found, by way of inference from such testimony, that plaintiff's use of the company car was occasional and sporadic, as opposed to regular. He noted that plaintiff's use was not subject to any well-defined or regular pattern and that at times the use might be more frequent than at other times. He construed the word "regular" strictly and against the company, and held that it did not include a sporadic and occasional use, but rather meant "a regular use that is susceptible of discerning a definite pattern." The trial justice then held that plaintiff's use of the 1966 Buick did not come within the definition of "regular" and that therefore his family automobile policy covered him and the company car he was operating at the time of the accident. He also held that this coverage was excess

insurance as provided in the policy. A judgment incorporating the trial justice's ultimate findings was subsequently entered.

We agree with the trial justice's determination that the only issue raised by this record is whether the 1966 Buick was furnished by Rolyn, Inc. for the regular use of plaintiff. If it was, it was not covered by the family automobile policy and defendant is not liable under that policy. If it was not furnished for his regular use, then defendant is liable under the terms of such policy.

The defendant argues that it is exempt from liability under plaintiff's family automobile policy because the car plaintiff was driving at the time of the accident was one "furnished for the regular use of" plaintiff and therefore excepted from coverage by the terms of that policy. This argument presents both a question of fact and one of law. The defendant contends that the trial justice overlooked the evidence, misconstrued the provisions of the policy, and committed error in his decision.

There is no merit to defendant's argument that the trial justice overlooked the evidence. While the fact that there is no evidence that plaintiff drove any other car is pertinent, it is not decisive of the issue whether the company car was furnished for his regular use. The trial justice inferred from plaintiff's testimony that the latter used the car "sporadically and occasionally, as opposed to regularly," and that such use was "not subject to any well-defined or regular pattern." We are not persuaded that the inference which the trial justice drew from plaintiff's testimony is unreasonable and consequently we must conclude that the evidence supports his findings that plaintiff's use of the company car was sporadic and occasional.

This raises the question whether such use, that is, a sporadic and occasional use, constitutes "regular" use within the meaning of the family automobile policy. It is

apparent from a reading of his decision that the trial justice felt that the phrase "automobile * * * not * * * furnished for the regular use of * *. * the Named Insured" was ambiguous. Having come to this conclusion the trial justice proceeded to construe the pertinent language strictly against defendant insurance company in accordance with the well-established rule in this state, *Nagy* v. *Lumbermens Mutual Casualty Co.*, 100 R.I. 734, 740, 219 A.2d 396, 400 (1966), and he held that "regular" meant "a regular use that is susceptible of discerning a definite pattern."

The defendant argues that the clause in question is clear and unambiguous and that the trial justice arbitrarily imported ambiguity into the family automobile policy and then resolved the artificial ambiguity in favor of the insured. *Compare McGowan* v. *Connecticut General Life Ins. Co.*, 110 R. I. 17, 289 A.2d 428 (1972). The question whether or not this clause is clear and unambiguous has been considered by other courts. Their decisions have not been consistent. Some have decided that the language employed in this clause is clear and unambiguous. *See Dickerson* v. *Millers Mutual Fire Ins. Co.*, 139 So.2d 785 (La. App. 1962); *Sumrall* v. *Aetna Casualty & Surety Co.*, 124 So.2d 168 (La. App. 1960); *Moore* v. *State Farm Mutual Automobile Ins. Co.*, 239 Miss. 130, 121 So.2d 125 (1960). Other courts have found that such language is ambiguous. *See Travelers Indemnity Co.* v. *Hyde*, 232 Ark. 1020, 342 S.W. 2d 295 (1961). *See also Pacific Automobile Ins. Co.* v. *Lewis*, 56 Cal. App.2d 597, 600, 132 P.2d 846, 848 (1943), where the court referred to this language as

> "* * * the rather broad and not very explicit language used in these policies to set forth the exception to the coverage otherwise provided."

After careful consideration we are convinced that the language in question, namely, "automobile * * * not * * *

furnished *for the regular use of * * *  the Named Insured"
(emphasis added) is not clear and therefore renders the
policy ambiguous. Just what is meant by "for the regular
use of * * *  the Named Insured"? Does the clause refer to
personal use? Or does it mean partly personal and partly
business use? Does it refer to a principal use as disting-
uished from a casual or incidental use? The insurer could
have been more explicit in the choice of language. In view
of such ambiguity the trial justice correctly construed the
policy provisions strictly and against the defendant insur-
ance company. *Nagy* v. *Lumbermens Mutual Casualty Co.,
supra,* at 740, 219 A.2d at 400. As the court said in *Ameri-
can Casualty Co.* v. *Lattanzio,* 78 N.J. Super. 404, 409-10,
188 A.2d 637, 639-40 (1963):

> "* * *  if an insurance contract is so drawn as to be
> ambiguous or to require interpretation, any fair doubt
> as to the meaning of the terms should be resolved
> against the company which prepared the policy. If
> the language used is fairly susceptible of two different
> constructions, one favorable to the insurer, and the
> other favorable to the insured, 'the interpretation sus-
> taining coverage must be applied.' *Mazzilli* v. *Acci-
> dent & Casualty Ins. Co. of Winterthur,* 35 *N.J.* 1, 7
> (1961). In considering the construction of inclusory
> and exclusionary clauses in that case, the Supreme
> Court stated:
>
>> " '* * *  where the policy provision under exami-
>> nation relates to the inclusion of persons other
>> than the named insured within the protection
>> afforded, a broad and liberal view is taken of the
>> coverage extended. But, if the clause in question
>> is one of exclusion or exception, designed to limit
>> the protection, a strict interpretation is applied.'
>> (at *p.* 8)"

The defendant argues that it made no difference whether
plaintiff used the car frequently or infrequently because,
according to the plaintiff's own testimony, the automobile
in question was available for his use at any time and he

could use it as he saw fit. This availability, defendant argues, is the real test.

The defendant has furnished us with several cases from other jurisdictions which have passed upon the issue before us in this case.[1] We have examined those cases, as well as others, but find that, because they are factually distinguishable, none of them are controlling here. However, practically all of the cases we have examined agree on at least the following:

(1) The question whether the particular use of a "non-owned" automobile is a "regular use" within the meaning of the policy is a question of fact. *Travelers Indemnity Co. v. Hyde, supra;*

(2) That no hard and fast rule has been or can be established for determining this question but that each case must stand or fall upon an examination of the facts in the particular case. *Farm Bureau Mutual Automobile Ins. Co. v. Marr,* 128 F. Supp. 67 (D.N.J. 1955).

(3) The purpose of the so-called "drive other automobiles" clause is to cover casual or occasional use of other cars. Any other interpretation would subject the insurance company to greatly added risks without the payment of additional premiums. It is the availability of the car and the number of times it is used that should be the criteria.

---

[1] *Wyatt* v. *Cimarron Insurance Co.,* 235 F.2d 243 (10th Cir. 1956); *Farm Bureau Mutual Automobile Ins. Co.* v. *Marr,* 128 F. Supp. 67 (D.N.J. 1955); *Aler* v. *Travelers Indemnity Co.,* 92 F. Supp. 620 (D.Md. 1950); *Lumbermens Mut. Casualty Co.* v. *Pulsifer,* 41 F. Supp. 249 (S.D. Me. 1941); *Travelers Indemnity Co.* v. *Hyde,* 232 Ark. 1020, 342 S.W.2d 295 (1961); *Rodenkirk, ex rel. Deitenbach* v. *State Farm Mut. Automobile Ins. Co.,* 325 Ill. App. 421 60 N.E.2d 269 (1945); *Miller* v. *Farmers Mutual Automobile Ins. Co.,* 179 Kan. 50, 292 P.2d 711 (1956); *Dickerson* v. *Millers Mutual Fire Ins. Co.,* 139 So.2d 785 (La. App. 1962); *Moore* v. *State Farm Mutual Automobile Ins. Co.,* 239 Miss. 130, 121 So.2d 125 (1960); *American Casualty Co.* v. *Lattanzio,* 78 N.J. Super. 404, 188 A.2d 637 (1963); *Farm Bureau Mut. Automobile Ins. Co.* v. *Boecher,* 37 Ohio L. Abs. 553, 48 N.E.2d 895 (1942).

*Vern* v. *Merchants Mutual Casualty Co.*, 21 Misc.2d 51, 52, 118 N.Y.S.2d 672, 674 (1952); *Lumbermens Mut. Casualty Co.* v. *Pulsifer*, 41 F. Supp. 249 (S.D. Me. 1941); *Rodenkirk, ex rel. Deitenbach* v. *State Farm Mut. Automobile Ins. Co.*, 325 Ill. App. 421, 60 N.E.2d 269 (1945).

With the foregoing generalities in mind we examine some of the cited cases for further guidelines.

In *Farm Bureau Mutual Automobile Ins. Co.* v. *Marr, supra,* the court suggested that the following signposts had aided other courts in determining this question:

"1. Was the use of the car in question made available most of the time to the Insured?

"2. Did the insured make more than mere occasional use of the car?

"3. Did the insured need to obtain permission to use the car or had that been granted by blanket authority?

"4. Was there a purpose for the use of the car in the permission granted or by the blanket authority and was it being used for such purpose?

"5. Was it being used in the area where such car would be expected to be used?"

The purpose of the so-called "drive other automobiles" clause is succinctly set forth in *Aler* v. *Travelers Indemnity Co.*, 92 F. Supp. 620, 623 (D.Md. 1950), where the court said:

"This case involves the construction and application of the so-called 'drive other automobiles' clause of the present standard automobile liability policy. The general purpose and effect of this provision of the policy is to give coverage to the insured while engaged in the only infrequent or merely casual use of an automobile other than the one described in the policy, but not to cover him against personal liability with respect to his use of another automobile which he frequently uses or has the opportunity to do so. More specifically the evident intention of the limitation with respect to other automobiles is to prevent a situation

in which the members of one family or household may have two or more automobiles actually or potentially used interchangeably but with only one particular automobile insured. That this is the general purpose of the provision is well and clearly stated in the annotation on the subject in 173 A.L.R. 901."

In trying to resolve this issue we are confronted with two competing ideas. On the one hand we have the trial justice's holding that a regular use means one that is susceptible of discerning a definite pattern. He explained his view as follows:

"If the named insured used the automobile all the time, five days a week, or perhaps all the time four days a week, this might have a pattern of regularity. However, the evidence here seems quite clear that his use was sporadic and occasional. At times it might be not used at all for a period of weeks. At other times it might be used as often as two or three times a week."

As we noted earlier he held that plaintiff's use of the automobile did not come within the definition of regular.

On the other hand, defendant argues that it made no difference whether plaintiff used the car frequently or infrequently — twelve times a month or thirty times a month — because according to plaintiff's own testimony the 1966 Buick was available for his use at any time and he could use it as he saw fit.

Thus, the issue narrows down to the question whether (1) a use susceptible of discerning a definite pattern, or (2) availability for use irrespective of the frequency or infrequency of the use is the deciding factor.

After considering the adversary claims here, as well as the decisions in the cited cases, we believe that both factors are, or may be, helpful in resolving this question, but that neither, standing alone, is decisive. Indeed we believe that the test used by the trial justice in this case, together with the five signposts suggested by the court in *Farm Bureau Mutual Automobile Ins. Co.* v. *Marr, supra,* at 70,

may be helpful here. We therefore proceed to apply those tests here.

We agree with the trial justice's finding that plaintiff's use is not susceptible of discerning a definite pattern and that such use was sporadic and occasional.

We address ourselves to the five signposts mentioned in the *Marr* case. The first question poses a difficult problem. It is true, as defendant points out, that in recross-examination plaintiff said in answer to defendant's questioning that while the car was at his place of business, he could use it any time he desired as president of the corporation, and that, if he had to go places, it was available for his use at any time he so desired. However, his replies to these questions under cross-examination must be read together with and in the context of his prior testimony that the car was regularly and primarily used by his son in his sales work on behalf of the company. On the basis of such testimony the trial justice found that the son used the car extensively in his sales work and that plaintiff's use was sporadic and occasional. On this record, although we recognize that the question is a close one, our answer to the question of whether the use of the car in question was made available most of the time to the insured is "No."

In view of our conclusion that the evidence supports the trial justice's finding that plaintiff's use of the car was sporadic and occasional, our answer to the question of whether the insured made more than mere occasional use of the car is also "No."

In answer to the third question we believe it is reasonable to say that plaintiff had blanket authority to use the car and that therefore he did not need to obtain permission to use the car.

Our answers to the fourth and fifth questions are, with respect to the time and place of the accident, in the affirmative.

Since the car in question was not made available to the plaintiff most of the time, in view of the finding that plaintiff's use was sporadic and occasional, and inasmuch as his use was not susceptible of discerning a definite pattern, we hold that the 1966 Buick Riviera was not an "automobile * * * furnished for the regular use of" the plaintiff.

The judgment is affirmed.

Mr. Justice Kelleher did not participate.

*Jackvony & DeConti, Merlin A. DeConti, Louis M. Cioci,* for plaintiff.

*Francis A. Kelleher, John E. Fuyat,* for defendant.