## COMMERCIAL STANDARD INSURANCE COMPANY, Appellant,

v.

## John T. FORD, Appellee.

### No. 7599.

Court of Civil Appeals of Texas.

Amarillo.

March 7, 1966.

Rehearing Denied March 21, 1966.

Cade & Bowlin, Lubbock, for appellant.

Crenshaw, Dupree & Milam, Lubbock, J. Orville Smith, Lubbock, of counsel, for appellee.

CHAPMAN, Justice.

This suit was instituted by appellant, Commercial Standard Insurance Company, against John T. Ford, insured, seeking a declaratory judgment as to what was meant in an automobile public liability insurance policy, in reference to a non-owned automobile, by the term, "an automobile or trailer not used by or furnished for the regular use of either the named insured or any relative." Appellant contended the construction was a question of law for the court and objected to a jury submission.

The record shows that the father, John T. Ford, while driving his son Burl's 1960 one-half ton Chevrolet pickup, had a collision on July 11, 1964, with Harold Young's automobile and as a result thereof Mr. Young was killed. Appellee, John T. Ford, was sued by the surviving widow and children. Appellant insurance company was asked to defend the suit under the terms of the mentioned policy, refused, and then filed this suit seeking a construction of the above clause. The trial court disagreed with appellant's contention that the construction of the clause was a law question and submitted the case to the jury upon two issues in exact language as follows:

1.

"Do you find from a preponderance of the evidence that at the time of the collision of July 11, 1964, the 1960 one-half ton Chevrolet Pickup Truck was an auto-

mobile furnished for the regular use of John T. Ford?

### 2.

"Do you find from a preponderance of the evidence that at the time of the collision on July 11, 1964, the 1960 one-half ton Chevrolet Pickup being driven by John T. Ford, was an automobile used by John T. Ford intermittently and incidentally?"

To the first issue the jury answered, "No," and to the second issue, "Yes." Though appellant has brought forward thirteen points of alleged error, those it briefs are all argued together.

All points except those which have reference to the failure of the court to define terms or which object in some manner to the submission of Special Issue No. 2, appellee's affirmative defensive issue, contend in some manner that the court erred either in not holding as a matter of law, or in not holding in the light of the evidence as a matter of law, that the controversial clause must be interpreted as saying Burl Ford's 1960 one-half ton pickup was furnished to his father for his regular use.

The points go to the failure of the court to grant appellant's Motion for Peremptory Instruction; the failure to grant its Motion for Judgment Non Obstante Veredicto; its Motion for Summary Judgment; and its objection to the submission to the jury of what we believe to be a vital fact issue.

■ The record shows a motion for summary judgment had been overruled prior to the trial on the merits of the case. No such motion having been filed by appellee, the only order in the trial court in that connection was the one overruling a motion for summary judgment of appellant. Therefore, that order was interlocutory and no appeal would lie therefrom. Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396; Craig v. Rio Grande Electric Co-operative, Tex.Civ.

App., 345 S.W.2d 460 (writ ref.). This being true, if the point of asserted error for previously overruling appellant's motion for summary judgment could be considered a point at all in appeal from a trial on the merits it would be no more than a "no evidence" point.

Appellant has cited four cases in its index of cases for its contention that the court, under the deposition and trial evidence, committed reversible error in not holding as a matter of law that the controversial clause absolved appellants from any obligation to defend the Young law suit and be obligated for any adverse judgment against John T. Ford. We have studied those cases carefully and have to say candidly that they just have so many material distinguishing features from our case that we do not consider they furnish any authority for appellant's contention that the case should not have been submitted to a jury. In a diligent search we have found no other cases that would so indicate. We hold the court was correct in submitting the case to a jury.

■ It has been textually stated and held in effect by case law in Texas that the purpose of an insurance contract being to furnish indemnity against loss, the contract should be constructed in such way as to effectuate this purpose, rather than a way which will defeat it. Blashfield Cyclopedia of Automobile Law and Practice, Vol. 6, Par. 3521, p. 139; Home Ins. Co., New York v. Springer, Tex.Civ.App., 131 S.W. 2d 412 (N.W.H.). The Galveston Court of Civil Appeals in Texas Lloyds v. Laird, Tex.Civ.App., 209 S.W.2d 937 (writ dismissed) has said: "It is a settled principle of insurance law that 'language of a policy which is susceptible of more than one construction should be interpreted strictly against the insurer and liberally in favor of the insured.'"

■ It is obvious from our statement of the nature of appellant's points heretofore

mentioned that they are "no evidence" points. In considering them, we must therefore view the evidence in the most favorable light to John T. Ford, and must indulge against the motion for peremptory instruction, motion for judgment n. o. v., etc., every inference that may be properly drawn from the evidence. Dunagan v. Bushey, 152 Tex. 630, 263 S.W.2d 148; Adams v. Slattery, 156 Tex. 433, 295 S.W.2d 859; Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60; Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256.

Both appellee, John T. Ford, and his son, Burl, lived in the town of Farwell, Texas. They were farming adjoining land a short distance outside the town. In addition, appellee farmed several other places, including some in New Mexico. Burl had suffered a nervous breakdown in 1962 and had been told by his doctor for a period of months not to drive a motor vehicle. His wife and father drove for him during that period but for several months before the accident between John T. Ford and the Young car, Burl's doctor had permitted him to start driving again.

He and his father worked together as a father and son normally would who worked adjoining farms. His son farmed one rented place but also worked on his father's farms for a salary. Burl had a wife and three children and the only means of conveyance he had was the 1960 pickup. In addition to using it in his farming operations, it was used as their family car. His father owned a 1962 Mercury Monterrey 4-door sedan; a 1964 one-half ton Ford pickup and a G.M.C. truck. On the very day of the collision between Mr. Ford and Mr. Young, Burl was enroute to Colorado on a fishing trip in his father's 1964 one-half ton Ford pickup because it was a better vehicle for such a trip. His father was driving his son's older and heavier pickup on the way home from changing the irriga-

tion water for Burl at the time of his collision with Mr. Young.

The evidence shows they interchanged pickups when one was more useful for a given purpose; that Burl's pickup was heavier and when there was some farm work for which a heavier pickup was more useful, appellee would use the son's machine if it was not in use at the time; that sometimes he would not use it for two or three weeks at a time; that there was never any understanding between the father and son that the father could use it regularly; that it was usually at Burl's house at night; that when John T. Ford kept it at night his pickup would be at Burl's house; that sometimes when he used it the period would be no longer than thirty minutes. On more than one occasion in the testimony he stated without any objection that he did not use Burl's pickup regularly.

"Q. Did he ever assign it to you or furnish it to you for your regular use, sir?

A. No, sir.

\* \* \* \* \* \*

Q. Did you ever consider this as a pickup that had been furnished to you for your regular use?

A. No, sir, I didn't use it that often."

Similar answers came at times even on vigorous cross-examination.

"A. I used it at anytime I seen fit, you know, if it was available, but I did not use it regular.

Q. Well, did you use it in your regular farm operation?

A. Well, yeah, in mine, and some in his, that is true.

Q. Well, that is regular use, isn't it?

A. Well, no, I wouldn't say so.

Q. When you use it in your regular occupation?

A. Well, no, I wouldn't use it that often. Maybe when mine was available, I maybe even when mine was there, if his was closer maybe I would use it."

With such evidence as that just quoted in the record, applied to the inferences we must indulge against the "no evidence" points raised it is clear that the court was legally correct in submitting the case to the jury.

In its Points 4 and 8 appellant asserts error of the court in submitting Special Issue No. 1 without giving the jury the legal definition of the term "furnished for the regular use of" and in refusing to instruct the jury that the term "regular use" meant a use of the truck by John T. Ford in connection with his regular activities and particularly with reference to his regular business, trade or occupation.

The record reveals that appellant made such objections in its Objections and Exceptions to the court's charge but there is no showing in the record that it complied with Rule 273, Vernon's Ann.Texas Rules, which requires, inter alia, that:

"A request by either party for any instructions, special issues, definitions, or explanatory instructions shall be made separate and apart from such party's objections to the court's charge."

Additionally, Rule 279 states, inter alia:

"Failure to submit a definition or explanatory instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or explanatory instruction has been requested in writing and *tendered* by the party complaining of the judgment." (Emphasis added.)

Additionally, the points are not briefed and no authority whatever is cited by appellant concerning such points. Therefore, we must assume they were waived. Weatherred v. Kiker, Tex.Civ.App., 357 S.W.2d 182 (N.R.E.); Whitson Company v. Bluff Creek Oil Company, Tex.Civ.App., 278 S. W.2d 339, affirmed 156 Tex. 139, 293 S. W.2d 488.

For the reasons stated and under the authorities cited the two points are overruled. In Points 7, 9 and 10 reversible error is asserted in connection with the submission of Special Issue No. 2. The points are neither briefed nor argued nor is any authority cited to sustain such points. Under the authorities cited in connection with Points 4 and 8 involving the same rules of law, we must assume they are waived. Additionally, even if it should be said, arguendo, that such issue should not have been submitted it was harmless in view of the fact that the judgment is supported by the finding in another special issue. Bruce v. Denton County Electric Cooperative, Inc., Tex.Civ.App., 377 S.W.2d 722; Dallas Railway & Terminal Co. v. Orr, Tex.Civ.App., 210 S.W.2d 863, affirmed 147 Tex. 383, 215 S.W.2d 862; Pope v. Jackson, Tex.Civ. App., 211 S.W.2d 958, affirmed Austin Road Co. v. Pope, 147 Tex. 430, 216 S.W.2d 563; Louisiana & A. Ry. Co. v. Chapin, Tex.Civ.App., 225 S.W.2d 614 (error refused.) And this rule was proper even before the adoption of the new rules of civil procedure in Texas, which generally are more liberal toward sustaining verdicts of the lower courts. West Texas Coaches v. Madi, Tex.Com.App., 26 S.W.2d 199; Thornton v. Moody, Tex.Civ.App., 24 S.W. 331 (error refused); Northwestern Nat. Life Ins. Co. v. Blasingame, 38 Tex.Civ. App. 402, 85 S.W. 819 (error refused); Ward v. Cathey, Tex.Civ.App., 210 S.W. 289 (error refused).

Finding no reversible error in the record before us, the judgment of the trial court is in all things affirmed.