LeRoy NEAL et al., Appellants,

v.

**UNITED STATES FIRE INSURANCE COMPANY, Appellee.**

No. 370.

Court of Civil Appeals of Texas.

Corpus Christi.

April 18, 1968.

Rehearing Denied May 9, 1968.

W. S. Fly, of Fly, Cory, Moeller & Stevenson, Kemper Williams, Jr., of Cullen, Mallette, Maddin, Edwards & Williams, Victoria, for appellants.

Walter Dunham, Jr., of Lewright, Dyer & Redford, Corpus Christi, for appellee.

## OPINION

SHARPE, Justice.

The sole point of error asserted by appellants is that the trial court erred in overruling their motion for judgment non obstante veredicto. Appellee's reply point contends that the complained-of action was correct because the evidence raised an issue of fact as to the controlling issue in the case.

This suit was brought by appellant Neal against United States Fire Insurance Company, hereafter USFICO, and Joe Comacho for declaratory judgment determining the liability of said insurance company under a policy of automobile liability insurance issued to Santos Comacho, the father of Joe Comacho. Joe Comacho filed an original answer in which he aligned with the plaintiff Neal and there-

after filed a cross-action against USFICO and Frank Mendez, who had intervened in the suit and also aligned with plaintiff Neal.

The present suit was instituted after trial on the merits of a prior automobile collision case in which judgment was rendered in favor of Jerry W. Stacy and Jess W. Stacy against LeRoy Neal and Joe Comacho, jointly and severally, with right of contribution in favor of Neal against Comacho; and in which Frank Mendez also recovered judgment against Joe Comacho. At the time of trial of the second case the insurance carrier for Neal had paid one-half of the judgment rendered against him. The relief sought by appellants in the instant suit was for declaratory judgment that the policy of insurance issued by USFICO covered Joe Comacho on the occasion of the collision involved in the first case and that USFICO is obligated to pay one-half of the said judgment rendered in favor of the Stacys and against Neal and Comacho, and for judgment in that amount against USFICO.

The insurance policy issued to Santos Comacho by USFICO for the period February 4, 1964 to February 4, 1965 was a family automobile policy, providing among other things for automobile liability insurance for Santos Comacho and any relative or member of his household. Joe Comacho is a son of Santos Comacho and lived in the home of his father. The policy insured Santos Comacho and his relatives in the operation of a 1956 Ford Custom Fordor Sedan owned by him and also with respect to any non-owned automobile, provided the use of same was with permission of the owner. The policy described a non-owned automobile as follows:

" 'Non-owned automobile' means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile."

The single special issue submitted to the jury, its accompanying instruction and the jury answers were as follows:

"Special Issue No. 1

"Do you find from a preponderance of the evidence that the vehicle owned by Frank C. Mendez was not furnished for the regular use of Joe Comacho?

Answer: 'It was not furnished for the regular use' or 'It was furnished for the regular use'.

We, the jury, answer: It was furnished for the regular use.

The phrase 'Furnished for regular use' as used in context does not imply the manner of use, that is, putting the automobile to the same uses to which an insured would use his own automobile, but implies a right to the regular use of the automobile in the sense that there is an expressed or implied understanding with the owner of an automobile that the insured could have the use of the particular automobile of the other at such times as he desired, if available."

A motion for judgment non obstante veredicto filed by Neal, Comacho and Mendez was denied by the trial court and judgment rendered that they take nothing against USFICO. The judgment also adjudged, determined and declared that the automobile owned by Mendez and being driven by Comacho on November 20, 1964, the date of the collision involved in the prior suit, was not a "non-owned automobile" within the meaning of the policy issued by USFICO, and that USFICO is not obligated to pay any portion of the judgment against Joe Comacho in said prior case. From that judgment, Neal, Comacho and Mendez have appealed.

■ In accordance with Rule 94, Texas Rules of Civil Procedure, USFICO specially pleaded its defense that the vehicle owned by Mendez was furnished for the regular use of Comacho. Therefore, appellants had the burden of establishing that

the Mendez vehicle was not furnished for Comacho's regular use. T.I.M.E., Inc., v. Maryland Casualty Company, 157 Tex. 121, 300 S.W.2d 68 (1957); Travelers Indemnity Company v. American Indemnity Co., 315 S.W.2d 677 (Tex.Civ.App., Fort Worth, 1958, n. w. h.). Appellants could have carried the burden of securing this essential finding either by the jury verdict or by way of conclusive evidence. Since the jury verdict was adverse to appellants, the only remaining question is whether the evidence conclusively established that the vehicle owned by Mendez was not furnished for the regular use of Comacho.

Appellants' motion for judgment non obstante veredicto was entirely premised upon the assertion that they were entitled to directed verdict at the close of the evidence. In determining whether a motion for directed verdict would have been proper, the test is whether the evidence at the trial was of sufficient probative force to raise an issue of fact. Crom v. County of Cameron, 310 S.W.2d 664 (Tex.Civ.App., San Antonio, 1958, n. w. h.). And the testimony must be considered in its most favorable light to the one against whom the directed verdict or the judgment non obstante veredicto is sought. Conflicts are to be disregarded and every reasonable intendment deducible from the evidence is to be indulged in favor of the respondent. Cage Brothers v. McCormick, 344 S.W.2d 203, 204 (Tex.Civ.App., San Antonio, 1961, wr. ref. n. r. e.). Where the evidence relied upon to support the contention that an issue has been conclusively established is the testimony of interested parties to the suit, we must apply the "interested party" rule as developed in Texas. See McDonald, Texas Civil Practice, Vol. 3, Sec. 11.28, Pages 1038–1040.

The two witnesses who testified in the trial below were Joe Comacho and Frank Mendez, both parties to the litigation. In summary form their testimony was as follows: Joe Comacho is the leader of a dance band known as the Tommy Comacho Band. He started playing in the band in 1959. Frank Mendez joined the band in 1960 or 1961. Comacho and Mendez both lived in Victoria, Texas. In April, 1963, Mendez bought the Chevrolet station wagon which Comacho was driving at the time of the accident involved in the prior suit. Before the station wagon was purchased, the band had used two automobiles to travel to their different out of town engagements. At the time he purchased the station wagon, Mendez had another automobile and knew he was going to use the station wagon for hauling the band on out of town dates. There were eight members in the band. Most of the members of the band had jobs other than with the band, including Mendez. Comacho had no employment other than in connection with the band. During the policy period of the policy involved in this litigation, Comacho did not own an automobile himself. He lived at home with his father and two brothers. About three months after he bought the station wagon, Mendez fixed up a trailer which had belonged to Joe and Tommy Comacho and put a trailer hitch on the back of the station wagon to pull the trailer. The station wagon was equipped to haul passengers and the band instruments were carried in the trailer. Mendez used the station wagon during the week. Mendez kept the keys to the station wagon. Comacho did not have a set of keys to the station wagon. Mendez made the payments on the station wagon and Comacho did not pay anything toward the purchase of it. Mendez received from the proceeds of the band engagements $15.00 per trip for furnishing the station wagon and Joe Comacho received $5.00 for gasoline. Most of the band engagements were played outside of Victoria, which required the band to travel. From the time Mendez got the station wagon, in April, 1963, until the accident in November, 1964, the band averaged seven to eight engagements a month. These engagements would be on

the weekends and most of them were out of town. The station wagon made all of these trips from the time it was purchased until the time of the accident in November, 1964 with the exception of six or seven times. Joe Comacho drove the station wagon on the out of town trips with the exception of around ten times, and on such occasions he rode in it. Mendez also rode in the station wagon when it made the out of town trips. Other members of the band sometimes drove the station wagon! but the driving was split pretty close to fifty-fifty between Mendez and Comacho. Most of the time Mendez sat in the front seat of the station wagon. Comacho drove the station wagon by himself on personal business on only one occasion other than on the weekends when the band was making a trip. The members of the band knew each other well. Mendez usually told the members who was to drive. Comacho on some occasions drove without anyone saying anything about it. It was understood that the driving was going to have to be shared because members of the band worked, including Mendez, the owner of the station wagon.

On cross-examination, Frank Mendez testified in part as follows:

"Q And you bought the station wagon, having in mind and knowing that you were going to use it, or one of its uses, at least, would be for hauling the band on the out of town dates?

"A Yes, sir."

Joe Comacho testified in part as follows:

"Q And that—and the idea was that Frank would buy that station wagon and put a trailer or hitch on it, and fix up the trailer, and that you would use, you and the rest of the band, would use the station wagon and the trailer on your out of town trips, isn't that right?

"A Yes, sir.

"Q And that's the reason he got the station wagon, wasn't it?

"A I think that is one of the reasons, sir."

Two Texas cases dealing with the question of whether a vehicle was furnished for regular use have been cited to us by the parties herein. These are Commercial Standard Insurance Company v. Ford, 400 S.W.2d 934 (Tex.Civ.App., Amarillo, 1966, wr. ref. n. r. e.), and Johnson v. Home Indemnity Company, 401 S.W.2d 871 (Tex. Civ.App., 1966, wr. ref. n. r. e.). In Ford the jury found that the vehicle was not furnished for the regular use of John T. Ford, which finding was adverse to the insurance company which had sought declaratory judgment. The Court of Civil Appeals held that the motion for judgment non obstante veredicto filed by the insurance company was properly denied. In Johnson, the Court of Civil Appeals reversed a summary judgment for the insurance company, based in part upon the ground that the vehicle there involved was furnished for the regular use of Johnson as a matter of law. Ford and Johnson are authority for the proposition that the respective movants for judgment non obstante veredicto and summary judgment were not entitled to same because there was a fact issue in each instance as to whether the vehicle had been furnished for regular use. The cited cases do not support appellants' position here that their motion for judgment non obstante veredicto should have been granted.

Appellants also cite two cases from other jurisdictions. These are George B. Wallace Co. v. State Farm Mutual Automobile Insurance Company, 220 Or. 520, 349 P.2d 789 and American Casualty Company v. Lattanzio, 78 N.J.Super. 404, 188 A.2d 637. In Wallace the court reversed because the trial court had not correctly defined the term "furnished for regular use." The question of definition is not directly involved in this case. The question here is whether an issue of fact was raised by the evidence.

In *Lattanzio,* a trial court decision, it was held that a Lincoln automobile was not furnished to Benjamin Lattanzio, the insured, for his regular use, and the cause of the policy which excluded from the definition of non-owned automobiles those furnished for the regular use of the insured was not applicable; and therefore that there was policy coverage for the vehicle and accident in question. In reaching the decision the court considered various evidentiary factors bearing on the ultimate issue of whether the vehicle was furnished for regular use. The case is but another example of where the fact-finder has determined such issue, in that case against the insurance company. The court held in part as follows:

"An exclusionary clause or definition, such as the one here involved, manifests an intention on the part of the insurer to protect itself from a situation whereby an insured could purchase a policy covering one automobile and be covered without qualification as to all automobiles available for his use. Annotation, 173 A. L.R. 901, 904 (1948); see also Rodenkirk, for Use of Deitenbach v. State Farm Mut. Automobile Ins. Co., 325 Ill.App. 421, 60 N.E.2d 269 supra, and Vern v. Merchants Mut. Casualty Co., 21 Misc.2d 51, 118 N. Y.S.2d 672 (Sup.Ct.1952). Thus, this type of policy extends coverage to the casual or occasional driving of automobiles other than those specifically covered without payment of an extra premium, while excluding the use of automobiles which are furnished for the regular use of the insured. Cf. Travelers Indemnity Company v. Hyde, 232 Ark. 1020, 342 S.W.2d 295 (Sup.Ct.1961). The clause in question represents an attempt on the part of the insurer to strike a balance between the desire of the insured to be covered, even though not always using the owned automobile, and its own right to receive payment of premiums based upon the risk presented by the number of automobiles operated. Cf. Lumber-

men's Mut. Casualty Co. v. Pulsifer, 41 F.Supp. 249, 251 (D.Me.1941). It has been held that the general effect of such a clause is to give coverage to the insured while engaged in only infrequent or merely casual use of the non-owned automobile, but not in respect to the operation of another automobile which he frequently uses or has the opportunity of using. Aler v. Travelers Indemnity Co., 92 F.Supp. 620 (D.Md.1950)."

We have concluded, under applicable rules, that the testimony in this case did have sufficient probative force to raise an issue of fact as to whether the station wagon belonging to Mendez was furnished for the regular use of Comacho. Appellants, therefore, did not establish conclusively that the vehicle was not furnished for Comacho's regular use, and a directed verdict in their favor at the close of the evidence would not have been proper. Appellants' motion for judgment non obstante veredicto, based upon their asserted entitlement to directed verdict, was properly denied by the trial court.

The judgment of the trial court is affirmed.