**CONSUMERS COUNTY MUTUAL INSURANCE COMPANY et al., Appellants,**

v.

**PAGAN–LEWIS MOTORS, INC., Appellee.**

No. 458.

Court of Civil Appeals of Texas.

Corpus Christi.

Sept. 11, 1969.

Rehearing Denied Oct. 23, 1969.

Auforth & Bonniwell, Charles A. Bonniwell, Wallace P. Woodruff, Corpus Christi, for appellants.

Allison, Baker & White, Roy Smith, Corpus Christi, for appellee.

## OPINION

SHARPE, Justice.

Appellants are Consumers County Mutual Insurance Company, one of the defendants below, sometimes hereafter "Consumers", and Elwood J. McGinley, plaintiff below. They appeal from a judgment rendered after jury trial in favor of appellee, Pagan-Lewis Motors, Inc., one of the defendants below, sometimes hereafter "Pagan-Lewis", based upon its motion for judgment non obstante veredicto, and which decreed that Elwood J. McGinley and Pagan-Lewis Motors, Inc., entered into a valid and enforceable contract for the sale of a 1967 Cougar Mercury automobile on February 25, 1967.

McGinley sued Consumers and Pagan-Lewis for declaratory judgment defining the rights and obligations of the parties arising out of a transaction between McGinley and Pagan-Lewis on February 25, 1967 involving a 1967 Cougar Mercury automobile, and particularly for determination of whether a valid and enforceable contract of sale and purchase had been consummated between those parties. McGinley's petition in substance alleged the following: On or about February 25, 1967 McGinley entered into a proposal with one Andy Anderson, a sales representative of Pagan-Lewis whereby McGinley was to purchase a 1967 Cougar automobile from Pagan-Lewis for $3,217.00. McGinley was to be allowed $600.00 for the trade-in of a 1962 Ford Galaxie sedan and was to pay $116.00 at which time he would be permitted the use of the Cougar automobile. Upon the payment by McGinley of $281.00 representing the balance of the down payment on March 11, 1967 title to the Cougar would be transferred to him and the remaining papers processed. On Monday, February 27, 1967, McGinley was involved in an automobile accident which resulted in major damage to the Cougar. Consumers County Mutual Insurance Company had some time previously issued an insurance policy to McGinley covering the Ford automobile then owned by him and containing a replacement provision under the terms of which he contended that he was entitled to obtain a new automobile if as a result of the transaction with Pagan-Lewis the 1967 Cougar was an "owned automobile". Consumers refused to acknowledge that the Cougar was an "owned automobile" under its policy of insurance with McGinley and denied liability to him. Pagan-Lewis took the position that a completed and enforceable contract had been entered into between it and McGinley and refused to either (1) deliver a new 1967 Cougar to McGinley upon his tender of $281.00, or (2) return McGinley's Ford trade-in along with his $116.00 partial down payment.

The relief sought by McGinley was that the court render declaratory judgment that there was no valid and enforceable contract entered into between him and Pagan-Lewis, or that any agreement between them was executory only and that the 1962 Ford Galaxie and the partial payment of $116.00 be returned to him, and that he be awarded $5.00 per day for loss of use of an automobile after March 11, 1967. Alternatively, McGinley requested the court to determine that the liability of Consumers be established and that under the terms of the policy McGinley be awarded the cash required to purchase a new automobile to replace the 1967 Mercury Cougar, less the $50.00 deductible under its terms; or if the court should determine that Mc-

Ginley was not entitled to receive cash for such purpose, that the court enter an order requiring Pagan-Lewis to release said automobile in its unrepaired condition to McGinley so that he might have it repaired by an automobile repair shop of his choice and approval.

Ultimately, the instant case was tried under stipulation that the sole issue for determination herein was whether or not a legal, valid and enforceable contract had been consummated between McGinley and Pagan-Lewis, and all other matters, including cross-actions, were severed for later disposition.

In answer to five special issues the jury found in substance as follows: (1) The buyer's order was not accepted by Pagan-Lewis on February 25, 1967; (2) The Texas Automobile Retail Installment contract was not accepted by Pagan-Lewis on February 25, 1967; (3) McGinley and Pagan-Lewis intended that the buyer's order would not be effective until March 11, 1967; (4) On February 25, 1967, McGinley and Pagan-Lewis intended that the buyer's order would not be effective until the deferred balance was approved by a responsible finance company; (5) The deferred balance was approved by a responsible finance company on May 11, 1967.

The judgment of the trial court contains the following provisions:

"It further appearing to the Court that Defendant and Cross-Plaintiff, Pagan-Lewis Motors, Inc., duly filed in this cause a motion for judgment Non Obstante Veredicto on the grounds that the evidence raised no issue of fact and that a directed verdict for said Defendant, Pagan-Lewis Motors, Inc., would have been proper, that reasonable notice of such motion was given and that on hearing hereof, all parties came by their attorneys and the Court having heard and considered such motion, determined that:

1. Viewing all evidence and testimony in its most favorable light to El-

wood J. McGinley and Consumers County Mutual Insurance Company, there is no evidence to support special issues No. 1, 2, 3, 4 and 5, and

2. That the motion for judgment Non Obstante Veredicto of Pagan-Lewis Motors, Inc. should therefore be granted, and

3. That a valid and enforceable contract for the sale of the 1967 Cougar in question was entered into on February 25, 1967 between Elwood J. McGinley and Pagan-Lewis Motores, Inc., notwithstanding the verdict of the jury, and

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court That: Elwood J. McGinley and Pagan-Lewis Motors, Inc. entered into a valid and enforceable contract for the sale of the 1967 Cougar on February 25, 1967. It is further ordered that all costs of this proceeding be taxed against Elwood J. McGinley for which let execution issue."

Consumers contends here that the trial court erred in granting the motion for judgment non obstante veredicto filed by Pagan-Lewis because the evidence raised issues of fact concerning whether or not a contract existed between McGinley and Pagan-Lewis on February 25, · 1967. We agree with Consumers that under the applicable rule there was some evidence to raise and support the jury answers to the special issues submitted and that the motion for judgment non obstante veredicto filed by Pagan-Lewis should not have been sustained.

■ Under Rule 301, Texas Rules of Civil Procedure, the trial court may render judgment non obstante veredicto only if a directed verdict would have been proper. The well settled rule for review of a judgment rendered either on directed verdict or non obstante veredicto, which involve "no evidence" contentions, is that we must consider the evidence in the light most favor-

able to the party against whom the judgment is given, disregarding conflicts in the testimony and indulging in his favor every intendment reasonably deductible from the evidence. Hart v. Van Zandt, 399 S.W.2d 791 (Tex.Sup.1965); Adams v. Slattery, 156 Tex. 433, 295 S.W.2d 859 (1956); Texas Employers Insurance Ass'n v. Smith, 235 S.W.2d 234, 236 (Tex.Civ.App., Galveston, 1950, writ refused); Neal v. United States Fire Insurance Co., 427 S. W.2d 676 (Tex.Civ.App., Corpus Christi, 1968, n. w. h.).

The evidence on the trial of this case consisted of the testimony of Elwood J. McGinley, the plaintiff, and that of Steve Tatar, General Sales manager of Pagan-Lewis, and a number of exhibits. The jury was instructed to disregard the testimony of a third witness. One of the exhibits was a printed form designated "Buyers Order" furnished by Pagan-Lewis. Two of the provisions therein contained read as follows: (1) This order is not valid unless signed by Dealer and approved by a responsible Finance Company as to any deferred balance; (2) This order not valid until accepted by an official of the company.

Elwood J. McGinley testified in part substantially as follows. On February 25, 1967 he talked with Mr. Andy Anderson of Pagan-Lewis concerning the purchase of the 1967 Cougar. McGinley identified his copies of several instruments signed by him on that date. The original instruments and other copies had been retained by Pagan-Lewis. These instruments were on printed forms and consisted of a Buyers Order, Automobile Bill of Sale, Purchase Money Security Agreement and Note, and Texas Automobile Retail Installment Contract. These instruments were not filled in at the time McGinley signed them except for some figures and notations on the buyer's order. McGinley also testified in substance that on February 25, 1967 he dealt only with Mr. Andy Anderson in connection with the transaction. Anderson said he would see about financing through the

Corpus Christi State National Bank and called them about the matter. McGinley paid $116.00 in cash and delivered two checks to Anderson, one for $77.00 and the other for $200.00, under an agreement they would not be cashed until his next pay day on March 11th. McGinley didn't believe the date was filled in on the checks. He later stopped payment on them. He said he understood the car would be his on March 11th when he paid some $200.00 and the tax. McGinley was shown the original of the buyer's order form, which had been retained by Pagan-Lewis, and he testified there was a lot more written on it than on his copy. He said that the buyer's order was not to be accepted until he paid the $200.00 and taxes. McGinley said he originally believed after the accident on February 27, 1967 that Pagan-Lewis would replace the damaged Cougar with another so that by March 11 he would have a new car, but Pagan-Lewis refused to do this. He also testified that his own insurance company (Consumers) told him the car was not his and they refused to cover his loss on it. McGinley said he called Mr. Anderson right after the accident and, after talking to the police, went to Pagan-Lewis' place of business. Anderson advised McGinley to notify his insurance company. Anderson did not tell McGinley who to make his payments to, and it was much later when McGinley received a letter from Ford Motor Credit Finance Company about the matter. The evidence reflects a letter from that company to McGinley dated May 11, 1967. McGinley further said that Anderson made some telephone calls on the day of the accident to a Corpus Christi Bank to see if he could get the car financed, but it was not financed when McGinley left Pagan-Lewis' place of business.

Mr. Steve Tatar testified in substance as follows: He is general sales manager for Pagan-Lewis. In that capacity he has direction of the salesmen and the finalizing of transactions after the salesmen finish with them. The personal knowledge he

had of the McGinley matter was that on February 25, 1967 when the transaction was completed he handled the paper work and checked on the figures. He had no personal knowledge of what the agreement was between McGinley and Anderson except what was on the paper. Tatar's testimony was uncertain and conflicting in a number of respects. Tatar said he approved the buyer's order on February 25, 1967. However, the original of that instrument reflects a number of notations which are not on McGinley's copy. On the original, the space provided for the date at the upper right hand corner contains "2–25–67" which has been lined through and "3–1–67" written above it. Several names and telephone numbers are also on the original only. When compared with the copy there are minor changes in some of the amounts appearing on the original and also some additional words and figures thereon. With reference to the crossed-out date of 2–25–67 and the date of 3–1–67 on the buyer's order, Tatar said it was in the writing of a girl in the office. He explained that he made ten-day reports to the factory in connection with new automobiles sold, and the "3–1–67" notation denoted the car went in on the "3–1" reporting date to the Ford district office in Dallas. Tatar said that the doodling on the original buyer's order, including the name of McGinley's attorney, was in his writing.

With reference to approval of the buyer's order by a responsible finance company as to any deferred balance, Tatar testified in substance as follows: He sometimes arranges financing of cars with several companies, Ford Motor Company or seven local banks in Corpus Christi. In this case he said he sold it to the Ford Motor Company. Pagan-Lewis and Ford Motor Company have an agreement, and he just calls or mails the contract to Ford. He said there was automatic approval by the finance company because of the arrangements with Ford. Pagan-Lewis can automatically draft on Ford at any time for the contract balance or send it through Ford for payment. Tatar ultimately testi-

fied that the McGinley contract was sent to Ford on May 10, 1967, but could have been sent there any time he wanted to. The answer by Pagan-Lewis to an interrogatory propounded to it prior to the trial was offered into evidence and reflected that the McGinley contract was sold to the Ford Motor Company on or about May 10, 1967, and was discounted at 4.75 per cent per annum. Tatar also said that the Cougar automobile, which had been at its place of business since February 27, 1967 had been repossessed by Pagan-Lewis after the first payment was defaulted. According to the buyer's order the first payment on the deferred balance would be due in 45 days and the filled in provision on the contract retained by Pagan-Lewis reflected that the installment payments were to begin on April 10, 1967. Tatar further testified in substance that Ford Motor Credit Company was in on the contract from the date the transaction was made on February 25, 1967, and prior approval was not necessary. However the record reflects that Pagan-Lewis had answered an interrogatory prior to the trial in a manner inconsistent with Tatar's testimony as follows:

"MR. BONNIWELL: This was, once again, a sworn statement asked prior to the trial. Question No. 28 of the interrogatories propounded by Consumers County Mutual to Pagan-Lewis. 'Did you agree with Mr. McGinley that you would carry the total time sales balance and that the thirty-six monthly installments of ninety-five dollars ninety-six cents each would be made directly to you?' And the answer between—in this instance, No. 29, was: 'Pagan-Lewis sells most of its contracts, but does not sell all of them. Thus, up until the time it actually sold the contract to a third party it retained the option of carrying the contract itself or selling it.' I would like to also read the second half of it, the answer to the same interrogatory. 'The agreement for the sale of the car was made between Mr. McGinley and Pagan-Lewis Motor Company and there was no other party to this agreement at

the time it was made.' Thank you. I pass the witness."

The Texas Automobile Retail Installment contract here involved is on a printed form of Ford Motor Credit Company which contains a provision for acceptance of it by the seller and assignment to Ford Motor Credit Company. McGinley testified that he signed the instrument in blank. However, the original, which was retained by Pagan-Lewis (and filled in by a girl at its office, according to Tatar), reflects that the above-mentioned provision was executed by Mr. John S. Pagan, as President of Pagan-Lewis, Inc. Tatar was not present and did not know when Mr. Pagan signed the instrument. McGinley's copy did not contain the signature of Mr. Pagan. Neither Mr. Pagan nor Mr. Anderson testified on the trial of the case.

■ Mr. Tatar was a highly interested witness whose testimony only served to raise fact issues, and it does not fall within the exception to the interested witness rule that it is so direct and positive and of such a nature that it can be readily contradicted if untrue, so that facts were conclusively established by it. There were a number of uncertainties and conflicts in Tatar's testimony and it was not sufficient to conclusively establish the performance of either of the two above-mentioned conditions contained in the buyer's order. Nor were they conclusively established by the exhibits or the rest of the evidence. Consideration of the evidence herein under the applicable rule leads to the conclusion that material fact issues were properly raised so as to preclude judgment non obstante veredicto in favor of Pagan-Lewis.

If effect is given to the jury findings it is apparent that neither of the two conditions contained in the buyer's order were fulfilled on February 25, 1967; and, therefore, on that date there was no binding and enforceable contract between McGinley and Pagan-Lewis for the sale of the 1967 Cougar.

■ Appellant Elwood McGinley has urged two points of error separate from those asserted by Consumers. These are that the trial court erred (1) in refusing to grant a temporary injunction commanding Pagan-Lewis to stop repairs on the 1967 Cougar, and (2) in assessing the costs against him. McGinley's first-stated point of error is without merit. No appeal was taken from the order denying a temporary injunction and McGinley concedes that the 1967 Cougar has long since been repaired. The issues raised by the point are now moot and will not be passed upon. See Cameron v. Saathoff, 162 Tex. 124, 345 S. W.2d 281 (1961). McGinley's second point of error concerning assessment of costs will be sustained. Under the judgment rendered by the trial court, McGinley was the unsuccessful party as against Pagan-Lewis and costs were assessed against him. Under our holding McGinley was and is the successful party and the record does not reflect any reason or good cause for adjudging the costs differently from that ordinarily provided for. See Rules 131, 141, T.R.C.P.; Art. 2524–1, Sec. 10, Vernon's Ann.Civ.St.

■ In view of the foregoing holdings, the judgment of the trial court must be reversed. In determining whether the judgment must be here rendered or if the cause should be remanded for new trial on the severed issue, we must consider two cross-points of error asserted by appellee Pagan-Lewis. These points in substance are 1) that the trial court erred in admitting the testimony of McGinley that the parties intended that the buyer's order would not be effective until March 11, 1967, and 2) that the evidence is factually insufficient to support the jury answers to special issues 1, 2, 3, 4 and 5. A review of the entire record leads us to the conclusion that appellee's cross-points do not reflect error which would authorize remand of the case for new trial.

The judgment of the trial court will be reversed and this Court will here render the judgment which should have been ren-

dered in the court below. Rule 434, T.R.C.P.; Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709, 715, 172 A.L.R. 837 (1945). Judgment will be here rendered in accordance with the jury verdict that Elwood J. McGinley and Pagan-Lewis Motors, Inc., did not enter into a valid and enforceable contract for the sale of the 1967 Cougar Mercury automobile on February 25, 1967. The judgment of this Court is strictly limited to that holding (in addition to the order of reversal) and the effect of it in the severed proceedings will be for determination of the trial court.

Reversed and rendered.