**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,**

v.

**Ismael COBOS, Sr., Ismael Cobos, Jr., and Johnny Ray Riley, Appellees.**

No. 08–93–00375–CV.

Court of Appeals of Texas, El Paso.

April 20, 1995.

Rehearing Overruled May 24, 1995.

---

**9.** Given our disposition of Point of Error No. Five, we need not address Points of Error Nos. Six and Seven.

James M. Rush, McMahon, Tidwell, Hansen, Atkins & Peacock, P.C., Odessa, for appellant.

Robert Scogin; and Robert Trenchard, Jr., Trenchard & Buckingham, Kermit, for appellees.

Before BARAJAS, C.J., and KOEHLER and LARSEN, JJ.

## OPINION

BARAJAS, Chief Justice.

State Farm appeals a judgment of the trial court declaring Ismael Cobos, Jr.[1] covered by a State Farm insurance policy. Junior was involved in an automobile collision with Johnny Ray Riley while driving a truck owned by Senior's employer. Appellant brought suit against Appellees, seeking a determination of its rights and obligations under the contract of insurance. After a bench trial, the trial court found Junior covered under the Cobos family's insurance policy because the truck was not furnished for Senior's regular use and because the truck was a substitute vehicle at the time of the accident as defined by the insurance contract. We affirm the judgment of the trial court.

---

1. The parties Cobos are father and son. We refer to Ismael Cobos, Sr., as "Senior," and to Ismael Cobos, Jr., as "Junior." We use the term "Appellees" to refer collectively to the parties Cobos and Johnny Ray Riley.

## I. *SUMMARY OF THE EVIDENCE*

Senior was employed by Price Construction Company (PCC), which furnished him a company vehicle to use on the job and for transportation to and from his workplace. This vehicle, the truck involved in the collision, was not for Senior's plenary use, and he rarely used it for purposes unrelated to work. Senior is the named insured in a Texas personal family automobile insurance policy that was issued by Appellant and in effect at the time of the accident.

On July 3, 1992, Senior and Junior were at a relative's house to assist in roofing repair work. Senior traveled to the house in the PCC truck, while Junior traveled to the house in the family car, which was insured under the State Farm policy. During the course of the roofing work, there developed the need for Junior to return to the family home to fetch a roofing knife. The family car that Junior had driven to the site was by then boxed in by several other vehicles. Moreover, Junior did not have the keys to the car, having earlier turned them over to his aunt. After trying unsuccessfully to contact his aunt to obtain the keys, and with his father's permission, Junior embarked on the errand in the PCC truck. While on the errand, he was involved in the accident at issue here.

The trial court has conveniently provided us with Findings Of Fact and Conclusions Of Law, of which two are critical. First, the trial court found that the PCC truck was not furnished or available for Senior's use as defined in paragraph 2–b of the exclusion clause quoted below. Second, the trial court found that the PCC truck was a substitute vehicle at the time of the accident as defined by paragraph 4 of the definitions section quoted below because the Cobos family car was not capable of being driven at the time of the accident because it was blocked in and its keys were missing.

## II. *DISCUSSION*

In two points of error, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's factual finding that the PCC truck was not furnished or available for Senior's regular use and the trial court's legal conclusion that the PCC truck was a "covered auto" within the meaning of the insurance policy. We find the evidence sufficient to support both determinations.

In considering a "no evidence" legal insufficiency point, we consider only the evidence that tends to support the factfinder's findings and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). If there is more than a scintilla of evidence to support the questioned finding, the "no evidence" point fails. *Mexico's Industries v. Banco Mexico Somex*, 858 S.W.2d 577, 580–81 (Tex.App.—El Paso 1993, writ denied); *United States Fire Ins. Co. v. Ramos*, 863 S.W.2d 534, 538 (Tex. App.—El Paso 1993, writ denied).

A factual insufficiency point requires us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (Tex.1951); *Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d 131, 136 (Tex.App.—El Paso 1992, writ denied); *Chandler v. Chandler*, 842 S.W.2d 829, 832–33 (Tex.App.—El Paso 1992, writ denied). The reviewing court cannot substitute its conclusions for those of the factfinder. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d at 136; *Chandler v. Chandler*, 842 S.W.2d at 833. It is not within the province of the court to interfere with the factfinder's resolution of conflicts in the evidence or to pass on the weight or credibility of the witnesses' testimony. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792 (1951). Where there is conflicting evidence, the factfinder's verdict on such matters is generally regarded as conclusive. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947); *Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d at 136; *Chandler v. Chandler*, 842 S.W.2d at 833.

The standard of review of a court's findings of fact after a bench trial is the same as the standard of review of a jury's verdict.

*Southern States Transp. v. State,* 774 S.W.2d 639, 640 (Tex.1989). Conclusions of law are reviewable de novo. *Middleton v. Kawasaki Steel Corp.,* 687 S.W.2d 42, 44, (Tex.App.—Houston [14th Dist.] ), *writ ref'd n.r.e.,* 699 S.W.2d 199 (Tex.1985).

Two provisions of the family insurance contract under which Senior was insured are relevant. The first appears in a section entitled "Exclusions," and reads:

We do not provide Liability Coverage for the ownership, maintenance or use of:

. . . .

2. Any vehicle, other than *your covered auto,* which is:

. . . .

b. furnished or available for your regular use.

The second relevant clause appears in a section entitled "Definitions," and reads:

*Your covered auto* means:

. . . .

4. Any auto or *trailer* you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

a. breakdown;

b. repair;

c. servicing;

d. loss; or

e. destruction.

In attacking the fact finding, Appellant relies primarily on *International Service Ins. v. Walther,* 463 S.W.2d 774 (Tex.Civ.App.—Austin 1971, no writ), which involved an employee injured in a collision while driving his employer's vehicle on the job. The *Walther* court seized on the fact that the employee was injured while driving his employer's truck on the job to find that the truck was furnished for his regular use as a matter of law. *Id.* at 776. The obvious difference in the instant case is that the collision not only occurred while Senior was on personal business, but it was Senior's son who was driving the vehicle. Significantly, *Walther* recognizes one of the cases relied on by Appellees, *Neal v. United States Fire Ins. Co.,* 427 S.W.2d 676, 678 (Tex.Civ.App.—Corpus Christi 1968, no writ), but finds the "facts therein ... too dissimilar to be of assistance...." *Id.*

*Neal* involved a similar family auto insurance policy issued to Santos Comacho, whose son, Joe, lived at home and was the leader of a dance band. The band frequently traveled out of town on weekends, transporting its equipment in a trailer owned by Joe and pulling the trailer with a station wagon owned by Frank Mendez. *Id.* at 679. Joe and Mendez shared driving duties on out of town trips. *Id.* at 680. Joe could not use the station wagon during the week but he could use it on weekends at will. *Id.* The jury found that the station wagon was not furnished for Joe's regular use, which finding the appellate court left undisturbed. *Id.* at 681.

Like Senior, Joe Comacho regularly used the vehicle, and could do so without asking permission during certain times and for certain purposes. Like Senior's employer, Mendez, the vehicle's owner, did not leave Joe's use of it to his whim. These facts reveal that the *Neal* court did not literally interpret the phrase "furnished for regular use." Indeed, Joe Comacho regularly used the vehicle and was given permission to do so. Instead, the *Neal* court focused on the scope and quality of the permitted use granted to Joe, which focus we think wise. We find the Oregon Supreme Court's observations on the matter insightful.

We are of the opinion, therefore, that the phrase "furnished for regular use" as used in context does not imply the manner of use, that is, [temporarily] putting the automobile to the same uses to which an insured would use his own automobile, but implies a *right* to the regular use of the automobile in the sense that there is an expressed or implied understanding with the owner of an automobile that the insured could have the use of the particular automobile or perhaps any automobile of the other *at such times as he desired,* if available.

*George B. Wallace Co. v. State Farm Automobile Insurance Co.,* 220 Or. 520, 349 P.2d 789 (1960) (emphasis added), *quoted in Johnson v. Home Indemnity Co.,* 401 S.W.2d 871,

872 (Tex.Civ.App.—Texarkana 1966, writ ref'd n.r.e.).

Thus, we are called upon to consider the scope of the permitted use granted to Senior. As a consequence, we are also called upon to consider the use made of the vehicle at a particular time because a party may operate a vehicle outside the scope of use permitted by the vehicle's owner. This analysis admittedly requires one step more than the simple examination of a vehicle's *status* that the insurance contract appears to contemplate. As the foregoing implies, however, we think the status of a vehicle, whether or not it has been furnished for regular use, is subject to change depending on the uses to which the vehicle is put. We have little doubt and Appellees concede that Appellant would not be obligated under the Cobos family's insurance policy had the collision occurred while Senior was driving on the job. This factual permutation causes us to confront the purpose of the regular use exclusion.

The purpose of the exclusion "is to make certain that the insured properly pays premiums on all of the vehicles which are regularly used and therefore are covered by the policy." *Benjamin v. Plains Ins.*, 650 F.2d 98, 100 (5th Cir.1981). The exclusion seeks to avoid burdening auto insurers with unknown liability for vehicles that insureds do not own but use as theirs.

■ We think it a modest requirement that insurers at least consider the use being made of a vehicle at the time of a collision, rather than allow them to exclude from coverage all vehicles driven by an insured, however intermittently he may drive them and however circumscribed may be the purposes for which he may use them. In short, we conclude that the question whether a particular vehicle was furnished for an insured's regular use is a fact question to be resolved by the factfinder[2]. In this light, the arguably conflicting results of *Walther* and *Neal*

are explained by the unremarkable reality that different factfinders can reach different conclusions[3]. Indeed, it is in resolving factual disputes in contested cases with contradictory evidence that a factfinder has its greatest utility. Significantly, it is also in such cases that a factfinder's decision is most difficult to disturb.

■ The trial court's finding that the PCC truck was not furnished for Senior's regular use was amply supported by the evidence, which is well surmised in the following exchange between Senior and his attorney at trial:

Q. Had your son ever driven that truck before?

A. No, sir.

Q. You didn't let him drive that truck?

A. No.

Q. As to whether this was for your use, were you able to use that truck for personal use or only on the job, to and from work?

A. To and from work.

Q. Was it rare that you used it other than on the job?

A. Yes.

Q. Because the vehicle you used for your personal business was the family car?

A. Yes.

Q. Can we agree that your company truck was not available for your use at all such times as you wanted to use it? It was only available for business?

A. Yes, for the company.

The foregoing testimony about the limited purposes for which Senior could drive the PCC truck provides some evidence to support the trial court's finding that the vehicle was not furnished for Senior's regular use. Moreover, its clarity and the absence of contradictory evidence lead us to conclude that

---

2. The bulk of relevant Texas case law is in accord. *See Neal v. United States Fire Ins. Co.*, 427 S.W.2d 676 (Tex.Civ.App.—Corpus Christi 1968, no writ); *Johnson v. Home Indemnity Co.*, 401 S.W.2d 871 (Tex.Civ.App.—Texarkana 1966, writ ref'd n.r.e.); *Commercial Standard Ins. v. Ford*, 400 S.W.2d 934, 936 (Tex.Civ.App.—Amarillo 1966, writ ref'd n.r.e.) (noting lack of case law on

issue and expressly finding "regular use" question appropriate for submission to jury).

3. Alternatively, as we implied earlier, we find that *Walther* is an exception to the line of cases in footnote two, and that it applies only where the driver of his employer's vehicle is involved in a collision while on the job.

the trial court's finding was not so against the great weight and preponderance of the evidence as to be manifestly unjust. Accordingly, we overrule Appellant's Point of Error No. One.

In its second point of error, Appellant attacks the sufficiency of the evidence to support the trial court's finding that the Cobos family's car was not available for normal use because of its loss or breakdown as defined by the insurance contract. Although Appellant directs its second point of error to a finding of fact, its agreement that the Cobos family's car was blocked in and that Junior had surrendered his keys to it make it apparent that Appellant actually challenges the legal conclusion that the PCC truck was a temporary substitute because the family car was unavailable for normal use as defined by the insurance contract. To this end, Appellant argues that these facts do not constitute a loss or breakdown in the strict sense of the terms. Appellant, however, is not entitled to a strict construction of policy terms to defeat coverage. *Glover v. Nat'l Ins.*, 545 S.W.2d 755, 761 (Tex.1977). A contract of insurance should give the policyholder "clear notice of any limitations of liability." *Republic Nat'l Life Ins. v. Heyward*, 536 S.W.2d 549, 557 (Tex.1976). Any ambiguities in the policy must be strictly construed in favor of coverage. *Barnett v. Aetna Life Ins.*, 723 S.W.2d 663, 665 (Tex.1987). Indeed, "we must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties['] intent." *Glover v. Nat'l Ins.*, 545 S.W.2d at 761.

Appellant argues that with some effort the parties Cobos could have secured keys to their car and moved the cars that blocked their car. We find the absence of the keys sufficient to resolve the matter and therefore confine our discussion to this issue. That keys or their equivalent could have been somehow obtained is undoubtedly true. This does not, however, mean that the family car was available. The relevant contractual terms here are "breakdown" and "loss."

While we are inclined to interpret the term "loss" to refer to total loss due to destruction, this is not supported by the presence in the contract of the term "destruction" as an independent reason that the car may be unavailable for normal use. We think "loss" broad enough to encompass any number of eventualities that may render a car inoperable, including the inability to move a vehicle because of missing keys. Further, we find persuasive Appellees' assertions that keys are an integral component for most automobiles, and their absence renders a car as inoperable as a flat tire or missing battery. These analogous situations would certainly fall under the contract's "breakdown" term. Appellant argues that missing keys are merely an inconvenience. All breakdowns, however, are inconvenient. While the lack of keys might be more readily remedied than other breakdowns, a car is no easier to operate, absent the gifts of a professional thief, without keys as it is to operate without tires. Further, the contract does not require that the insured's primary vehicle be physically impossible to operate or even that it be extremely burdensome to operate. It only requires that the primary vehicle be unavailable for normal use because of loss or breakdown. We find the absence of keys encompassed by both the terms breakdown and loss. Accordingly, we overrule Appellant's second point of error.

The parties Cobos in their brief seek damages in an amount equal to ten times the taxable costs pursuant to Texas Rule of Appellate Procedure 84, claiming that Appellant prosecuted this appeal solely for purposes of delay. We find no merit in this contention, especially given the factual similarity of the instant case to *Walther* and the effort we expended to interpret and overcome it. We deny the Cobos' request for Rule 84 damages.

Having overruled Appellant's points of error and denied the Cobos' request for delay damages, we affirm the judgment of the trial court.